# SUPREME COURT.

## THE PEOPLE OF THE STATE OF NEW YORK agt. THE CENTRAL CITY BANK.

Where an objection is made to an *order to show cause*, that it was not made at a *regularly adjourned special term*, it will not be *presumed* that the order was made at a term *irregularly* held.

Where the court has been regularly convened, it continues open till actually adjourned; an order for its continuance is not essential; and an order made by the court that it should so continue, is not necessary to be entered with the clerk; and if it was, it could be entered *nunc pro tunc*, in order to sustain otherwise regular proceedings had under the order.

Where an *order* is properly granted by the court in an action or proceeding, the delay or omission of a clerk to make actual and speedy entry of it in the minutes of the court—as it is his duty, without any special directions to that effect—cannot be allowed to prejudice the substantial rights of parties.

An *order to show cause* issued against a *bank* is properly served upon its *vice-president*, especially where it appears that he is also a *director*, which perhaps might be presumed from his office of vice-president.

Where *two receivers*, appointed to wind up the affairs of an insolvent bank, are appointed *on the same day*, and both claiming the assets of the bank and the right to act, one of them being in actual possession, the court, on the application of the other receiver for the removal of the one in possession, and for possession, must regard it as a question of legal *priority*, and of course must take notice of the *fractions of the day* upon which such appointments were made.

The mere *preparation* and *verification* of papers for an application for the appointment of a receiver, &c., cannot determine the question of *priority*.

Where one of the two applications for the appointment of a receiver—both made on the same day, before different justices, in different judicial districts—obtained the first judicial action by *service of papers*, of the first *granting the order*, of the first perfecting of the appointment, by the *execution*, *approval and filing of the required bond*, it took precedence of the other, notwithstanding the latter receiver first took actual possession of the property and assets of the bank.

The provisions of the Revised Statutes (2 *R. S.* 461), entitled "Of proceedings against corporations, in equity," are not repealed or abolished by chapter 226 of the laws of 1849 (*Sess. Laws* 1849, *p.* 340), entitled, "An act to enforce the responsibility of stockholders in certain banking corporations and associations, as prescribed by the constitution, and to provide for the prompt payment of demands against such corporations and associations."

Therefore, under the Revised Statutes, proceedings may still be instituted by the people, through their attorney general, for the dissolution of a moneyed corporation and the appointment of a receiver to wind up its affairs. This valuable right was not intended to be in any wise impaired by the act of 1849. So far as this question is concerned, they do not necessarily conflict, and may well stand together.

*Albany General Term, March,* 1867.

People agt. Central City Bank.

*Before* PECKHAM, MILLER *and* HOGEBOOM, *Justices.*

APPEAL. by plaintiffs from order at special term, refusing attachment and other relief.

J. H. MARTINDALE, *attorney general, for plaintiffs, appellants.*

DANIEL PRATT *and* LYMAN TREMAIN, *for defendants, respondents.*

*By the court,* HOGEBOOM, J. The plaintiffs moved at special term, in the third district (where the venue was laid), for an order against Charles B. Sedgwick, Esq., of Syracuse, to show cause why the custody of the assets of said bank is withheld from L. Harris Hiscock, the receiver appointed therein by Justice PECKHAM, why an attachment should not issue against him the said Sedgwick, why he should not be punished for his alleged misconduct, and why the order (of Justice FOSTER) appointing him the said Sedgwick receiver should not be vacated.

The motion is made upon all the papers in the case, and it is necessary to look into most of them to determine the merits of the application. The Central City Bank suspended payment on Saturday, the 29th day of December, 1866. Upon a petition of the attorney general, accompanying papers stating that fact and the insolvency of the bank, verified on the 31st day of December, 1866, Justice PECKHAM, at special term, granted an order for the defendant to show cause on that day, at 11 o'clock A. M., why the business of said corporation should not be closed and a receiver appointed. This order, together with the summons and complaint, were personally served upon Hon. Ee Roy Morgan, the vice-president, and a director of said bank, on said 31st day of December, at about 10½ o'clock A. M. At the time appointed for showing cause, the plaintiffs appeared by counsel, and the defendant did not appear. An order was thereupon granted at special term, by Justice PECKHAM, that

the said Central City Bank be and the same was thereby dissolved, and restraining the bank and its officers from exercising any of its corporate functions, and from receiving or disposing of any of its effects, except to the receiver, and appointing L. Harris Hiscock, on filing a proper bond, duly approved (describing same), receiver of the bank, with the usual powers in closing up the affairs of the bank and making final settlement of the same. This order was filed with the clerk at about 11:35 A. M. of the 31st of December, and on the same day, at about the same hour, the required bond, duly approved, was filed with the clerk. Mr. Hiscock, learning that Mr. Sedgwick was in possession of the assets of the bank, called upon him, on the 3d day of January, 1867, exhibiting to him the order appointing him receiver, and demanded of him possession of said assets, with which demand said Sedgwick refused to comply. Thereupon the proceedings before referred to were instituted, to compel such compliance and to punish him for contempt, which resulted in the order at special term, from which this appeal is taken.

The ground upon which said Sedgwick refused compliance with said order, and declined to deliver said assets, was that as he claimed he himself was the lawful receiver of the bank, and entitled to hold and administer its assets. On the 29th day of December, 1866 (the day on which the bank suspended payment), George·Barnes, the cashier of the institution, initiated proceedings under the act of 1849, to obtain an injunction against the bank and the appointment of a receiver; that is, he employed counsel and verified a petition on that day for such purpose. Upon this petition, Justice FOSTER, on the 31st day of December, 1866, at chambers, and as early as 11 o'clock of that day, granted an order that said bank, on the same day, at 4 o'clock P. M., show cause why it should not be declared insolvent, and why an injunction should not issue and a receiver be appointed. These papers were soon thereafter duly served upon Oliver F. Burt, the president of the bank (as by said order required),

on said 31st day of December. At the time appointed the parties appeared, and Justice FOSTER, at chambers, made an order declaring the bank insolvent, awarding an injunction against the further exercise of its functions, and appointing the said Charles B. Sedgwick receiver of the bank, on his executing and filing with the clerk a bond, with sureties, duly approved (as specified in said order). On the same day, the requisite bond, duly approved, was executed and filed with the clerk of Onondaga; and thereupon, also on the same day, said Sedgwick, as such receiver, demanded and received from Oliver F. Burt, the president, possession of the property and assets of the institution, which he still retains.

The proceedings under which the respective parties acted in obtaining the appointment of their respective receivers, considered without reference to each other or to the validity of the statute under which they were respectively had, appear to have been regular, or, at least, not invalid. Some objections, partly of a technical character, are taken by the defendant against the plaintiff's proceedings, on the question of regularity, but I think they have not a sufficient foundation to invalidate the proceedings. Thus, in regard to the orders made by Justice PECKHAM, 1st, the order to show cause, and 2d, the order appointing a receiver, it is said they are invalid, because not shown to have been made at a regularly adjourned special term, and not to have been actually entered by the clerk. As to the first objection, I think the answer is, it will not be *presumed* that they were made at a term irregularly held. There is nothing to show that the special term in question was not the continuance of a term regularly held by the justice, and held open by him for the transaction of further business, at his chambers or elsewhere. The court having been regularly convened, continues open till actually adjourned. An order for its continuance is not essential; and an order made by the court, that it should so continue, is not necessary to be entered with the clerk. If it is so, I think when actually made by the court (which is

the act which gives it vitality), it is the duty of the clerk to enter it, or if accidentally omitted, it may be entered by him *nunc pro tunc*, and would even now, if necessary, be ordered to be entered, to sustain proceedings had under it otherwise regular. If Justice PECKHAM's special term was of this character, as we may presume, there is nothing to impeach their validity in the respect just specified. As to the second objection, that the orders were not entered by the clerk, as I have just said, they were the orders of the court, approved by the seal of the justice, and *must* be entered. If not entered immediately, as is of course more appropriate, they may be entered afterwards. It is the clerk's duty to enter them, without any special directions to that effect, and they may be entered *nunc pro tunc*, when accidentally omitted, and when necessary to sustain proceedings had in good faith, and otherwise unexceptionable. The delay or omission of a clerk to make actual and speedy entry of the order in the minutes, cannot be allowed to prejudice the substantial rights of parties.

Again, it is said that the order to show cause was not properly served, and that no proper evidence of service was furnished to the court or incorporated in the order. The order was served on the vice-president, and I think he was a proper person on whom to serve. It now appears that he was also a director, and I rather think that would be presumed from his office of vice-president. Although the evidence of such service is not recited in the order appointing the receiver, I think we may presume that the evidence of it was presented to the court before it allowed them to take an order on the non-appearance of the defendant, which was directed to be served on the defendant.

It is supposed that, as both of these receivers were appointed on the same day, and Sedgwick has possession of the assets, the court will not inquire into the fractions of a day to displace his possession. But it is a question of actual priority, which, I think, we are bound to settle, and that when par-

ties stand upon their legal rights, in a matter in which, in themselves considered, both are unexceptionable men, if we can fairly determine the question of legal priority, the ends of justice require that it should be carried into execution.

These preliminaries disposed of, two questions remain : 1. Were the Revised Statutes in operation, so as to justify the proceedings taken by the attorney general? 2. If so, which party had the legal priority of right to the possession of the assets?

We will consider the latter question first.

Although the petition for the appointment of a receiver was first prepared and verified in the case pending before Justice FOSTER, yet the first judicial action was taken in the case pending before Justice PECKHAM, both, however, being on the same day. The precise hour does not appear, further than that Judge PECKHAM'S order was served about half an hour before Judge FOSTER'S order was granted. All the subsequent judicial proceedings necessary to perfect the appointment of a receiver, had before Justice PECKHAM, preceded those before Justice FOSTER. Justice PECKHAM'S order to show cause was returnable at 11 A. M., and his order for the appointment of a receiver, as granted, was filed with the clerk about 11:35 A. M., together with the bond of the receiver, duly executed and approved. Justice FOSTER'S order to show cause was not returnable till 4 o'clock P. M., and it was at or after that hour that it was made, the bond filed, and the appointment of Mr. Sedgwick perfected. On the *same* day Sedgwick obtained possession of the assets. The mere preparation and verification of the papers cannot determine the question of priority; and whether it be determined by the question of first judicial action, of first service of papers, of the first granting of the order for the appointment of the receiver, or the first perfecting of the appointment, by the execution, approval and filing of the required bond, the proceedings had before Justice PECKHAM take precedence. One of these latter questions must, I think, deter-

mine it; for the mere fact that Sedgwick first obtained the actual possession of the assets cannot settle the question of legal right.

The defendants claim that the provisions of the Revised Statutes, entitled "Of proceedings against corporations, in equity" (2 *R. S.* 464, 465), under which the plaintiffs evidently proceeded in this case, are abolished by chapter 226 of the laws of 1849 (*page* 340), under which the proceedings were instituted which resulted in the appointment of Mr. Sedgwick. There is no express repeal; and if there be any repeal, it must be a repeal by implication, resulting from the inconsistency of the two statutes, or from the evident intent of the legislature to substitute the latter proceedings in the place of the former. The first four sections relate to the liability of stockholders, and have no connection with this subject. Sections 5 and 6 provide for the speedy enforcement of claims against the bank by suit, judgment and execution, and on the return of an execution unsatisfied, for an order declaring the insolvency of the corporation. Sections 7, 8 and 9 provide for an application for an order of the same kind by a creditor having a demand exceeding $100, after the lapse of ten days after demand of payment of such claim and refusal to pay, and for a temporary injunction, and also ultimately, after a hearing, for an injunction restraining the exercise of its corporate rights, and for a receiver. Section 10 (under which the defendant's proceedings were taken) provides for an application for an order declaring the corporation insolvent, or in imminent danger of insolvency, by any one or more stockholders, to the amount of one-tenth of the capital of the bank, and also for a temporary and final injunction and a *receiver*, as specified in section 9. Section 12 defines the powers and duties of the receiver, and all the subsequent sections of the act appear only to contain provisions for the speedy and effectual execution of his trust, and for the prevention of delays in the enforcement of demands against corporations.

This act, it is plain, does not cover a large number of cases in which courts of equity have exercised jurisdiction over corporations, many of which are recited in the title of the Revised Statutes heretofore quoted, and among others, several of the cases specified in sections 39, 40, 41, of that title (2 *R. S.* 464), by which, in the event of the insolvency of a corporation, its violation of any of the provisions of its act of incorporation, or of any other act binding on such corporation, a court of equity may, *upon the application of the attorney general in behalf of the state,* issue an injunction restraining the corporation from the exercise of its corporate powers, and from the collection of its debts, and from the disposition of its property, and may also, *in any stage of the proceedings, appoint one or more receivers* to take charge of the property and effects of such corporation.

I think it could not have been intended by the act of 1849 to repeal these provisions of the Revised Statutes, so far as respects the people of the state. The act of 1849 does not provide for them, otherwise than as they might happen to be *creditors* of the corporation. It is emphatically the right of the people, in their sovereign capacity, to enforce strict observance of the obligations imposed by law and by their charters, not the least important of which is the obligation to pay their debts on demand, and on default of such observance to institute proceedings through their attorney general for the dissolution of the corporation and the appointment of a receiver to wind up its affairs. I cannot believe this valuable right was intended to be in any wise impaired by the act of 1849. So far as this question is concerned, they do not necessarily conflict, and may well stand together. The convention of judges of the first and second districts, which met in October, 1857, under peculiar circumstances, and under the pressure of a very just and laudable desire to sustain the banks in the pecuniary crisis of that period, pronounced no opinion inconsistent with the maintenance of this action. They say: "In all cases in which the act of

1849 is applicable, it is deemed to supersede the provisions of the Revised Statutes." (*Livingston* agt. *The Bank of New York*, 5 *Abb.* 343.)   The language is guarded, and I think leaves the Revised Statutes to operate in a case like the present.   Nor does Justice ALLEN, in the case of *Ferry* agt. *The Bank of Central New York* (15 *How.* 450), decide the question adversely to the views now presented.   On the contrary, he says, "I am aware that the policy of the law does not favor the repeal of statutes by implication, and that ordinarily there must be a clear repugnance between the two statutes before the latter will be held to operate as a repeal of the former, in the absence of a repeal in terms, and that courts hold against the repeal when both can stand together. *These two statutes cannot be said to be so repugnant to each other that they cannot in many things stand together.*"   *   * "The question is one of too much importance to be hastily decided at special term, unless necessary to the determination of a pending matter; and as I do not deem it essential to pass upon it upon this motion, I will not further consider it." It will be noted that the case of *Ferry* was the case of a *stockholder* of the bank, and was not therefore like the present case.

As the result of these considerations, I think that the order of the special term, which continues the injunction, should be *reversed.*

Something is said in the papers about the comparative fitness of these two persons for the office of receiver, their comparative leisure for that purpose, and the comparative extent in which they represent the wishes of a majority of the stockholders.  But I discover no reason for any just criticism upon either of them as to their personal fitness or business capacity.   If any objection really exists on that score, there can be no reason why an application for his removal, and having that object directly in view, may not be hereafter made.

It is further said that it is inadmissible in this collateral

way to attack the proceedings before Justice FOSTER. We do not propose to take any jurisdiction of those proceedings; but, pending before us, in an application originating in this district, a question as to the validity of the appointment of a receiver, and as to the priority of his title to the assets of the bank, compared with that of a receiver appointed elsewhere, we cannot decline to decide the question necessarily involved. Nor should Mr. Sedgwick be punished for contumacy, or for a disobedience of the order of the court. He appears to have acted in good faith, and had the authority of an order of the .court, which he was probably entitled to regard as valid until pronounced otherwise, on the question of priority, by a competent tribunal. That decision being now pronounced, it will be his duty to obey it and deliver over the assets to Mr. Hiscock, the receiver first appointed. I see no other course to pursue. These receivers cannot with propriety both act. They are appointed under distinct and independent proceedings, and by the terms of their appointment each has entire control of all the assets of the bank. The title of the one is necessarily exclusive of that of the other, and the question of priority must be determined as a legal right.

I think the proper order to be entered is, that the order of the special term be reversed; that L. Harris Hiscock be declared the lawful receiver of the property and assets of the Central City Bank, and entitled to their custody and possession; that Charles B. Sedgwick, Esq., deliver over the same on demand to said Hiscock, so far as they are in the possession or under the control of said Sedgwick, and that in the event of his neglect or refusal to do so, said Hiscock have leave to apply at special term for the proper enforcement of this order.

MILLER, J., concurred.

PECKHAM, J., expressed no opinion.