PEOPLE *v.* McGARRY.

1. COURTS—ADJOURNMENT—JOURNAL ENTRY—JURISDICTION—PRESUMPTION.

A criminal cause was transferred to the circuit court of another county, and the respondent was ordered to appear for trial on May 1st. The court to which the cause was transferred had adjourned on March 29th previous; the journal entry of that date showing, "Thereupon court adjourned." On the call of the case on the day fixed for trial, it was objected by respondent that the term had expired, and the court was without jurisdiction. *Held,* that it did not appear that the court had adjourned without day, and that since, otherwise, the term continued until the next succeeding term, the court had jurisdiction to try the respondent.

*Held,* further, that 1 Comp. Laws, § 303, requiring an ending of the term when the judge fails to attend for five successive days, was not controlling, since it did not appear that the judge had failed to attend, and there was no presumption to that effect.

2. CRIMINAL LAW—BRIBERY—INDICTMENT—SUFFICIENCY.

An indictment charging respondent with bribing a city attorney to advise the execution of a contract between the city and certain others, the measure being one that might come officially before him, states an offense, although the contract was one which the city had no authority to make.

3. SAME—CORPUS DELICTI—EVIDENCE—CONSPIRACY—RES GESTÆ—CONFESSIONS.

Where, in a prosecution for bribery, it was claimed that there

was no evidence of the *corpus delicti*, except extrajudicial
confessions, *held*, that all testimony going to show that the
person alleged to have been bribed actually received a bribe
was admissible; and, a conspiracy to bribe having been estab-
lished, in which respondent took part, what respondent said
in planning and carrying out the plan was *res gestæ,* and dis-
tinguishable from confessions, although consisting of state-
ments of transactions to his confederates, if they were trans-
actions in the furtherance of the enterprise.

4. SAME—ACTS AND STATEMENTS OF CONSPIRATORS.
    Where a conspiracy between respondent and others to corruptly
    obtain municipal action, of which the alleged bribery of the
    city attorney was an incident, was proved, conversations be-
    tween the conspirators in respondent's absence were admis-
    sible, as well as their acts, so long as they were shown to have
    been in furtherance of the project, as contradistinguished
    from mere narration of past transactions.

5. SAME—ORDER OF PROOF—DISCRETION OF TRIAL JUDGE.
    The order of proof is largely, if not wholly, within the discre-
    tion of the trial judge; and, there being ample evidence of a
    conspiracy, and respondent's connection therewith, it was not
    reversible error to admit the statements and acts of other
    conspirators before the introduction of evidence showing re-
    spondent's complicity.

6. SAME—LETTERS.
    A letter written by one of the conspirators to another, stating
    what had been done with relation to the official bribed, was
    admissible as a part of the transaction; there being direct,
    positive, and competent proof that respondent became con-
    nected with the conspirators at an earlier date.

7. SAME—TRIAL—EXCLUSION OF WITNESSES.
    Where, in a prosecution for bribery in furtherance of a con-
    spiracy, an order was made excluding all witnesses during
    the trial, and, one of the conspirators having given testimony
    for the people, another was called, and, before he was inter-
    rogated by the prosecution, it was brought out by the defense
    that he had in his possession, for the purpose of indexing,
    some of the typewritten stenographer's notes of the former
    witness' testimony, and had talked about it with one of the
    counsel for the people, the application of respondent to exclude
    all testimony from the witness was properly denied.

8. SAME—EVIDENCE—PROBABILITIES.
    Testimony of the wife of one of the conspirators that, when her
    husband left New York for Michigan, he had no considerable

amount of money, and on his return, a week or two later, she saw him have $700, was admissible as a fact consistent with the claim that he received $1,000 a short time before.

9. SAME — FAILURE TO PRODUCE WITNESSES — COMMENTS OF COUNSEL.

It was not error, under the circumstances of the case, as shown by the record, to permit counsel for the people to comment on the failure of respondent to produce particular witnesses, as well as a deposition taken; the rule of permission extending to criminal cases, and applying to depositions taken and not used, and to accomplices, and to witnesses within respondent's reach or control.

10. SAME—COMMISSION OF OFFENSE—PARTICULAR DAY—INSTRUCTIONS.

Where respondent, charged with bribery in furtherance of a conspiracy, in a conversation with his co-conspirators, as testified to by them, stated that he paid the money to the official bribed on a certain day, and there was no evidence that it was paid on any other day, but respondent introduced testimony tending strongly to show that he was absent on the day charged, it was not error to instruct the jury that respondent's conviction did not necessarily depend on their ability to find that he paid the money on the day specified, but that it would be sufficient if they were convinced, from the circumstances shown, that it was paid on some other day about that time.

11. SAME—MISSTATEMENTS OF RESPONDENT ON FORMER TRIAL.

Previous misstatements of respondent in relation to matters material to the issue were admissible, although made as a witness on the trial of the official bribed.

Exceptions before judgment from Allegan; Wolcott, J., presiding. Submitted November 20, 1903. (Docket No. 237.) Decided April 5, 1904.

Thomas F. McGarry was convicted of bribery. Affirmed.

*Allen B. Morse* and *William F. McKnight*, for appellant.

*William B. Brown*, Prosecuting Attorney, and *Charles E. Ward*, Assistant Prosecuting Attorney (*Wesley W. Hyde*, of counsel), for the people.

HOOKER, J.    This cause is closely related to that of *People* v. *Salsbury*, 134 Mich. 537 (96 N. W. 936).    In this cause the defendant is charged with bribing one Salsbury, who was convicted of receiving a bribe in that case.    It follows that the cases are similar, and, as a perusal of that case will aid in understanding this, we do not state the facts at length in this opinion.    Several, and perhaps what may properly be called the more important, questions discussed in the briefs of defendant in this case have been settled by the former opinion, which, it is but just to say, was filed after the briefs had been prepared and filed in this cause.    In view of that decision, we find it unnecessary to further refer to such questions, and will endeavor to deal only with such as were not passed upon there.

There are nearly 600 assignments of error, and it will be impracticable to deal with each separately.    We will therefore be guided by the brief of counsel for the appellant, which has attempted to group them with relation to specific questions.

*Was there jurisdiction to try defendant on May 1st?* This case being pending in the superior court of Grand Rapids, it was found difficult to obtain a jury, and the judge of that court made an order that it be transferred to the circuit court for the county of Allegan, and that the respondent appear there on May 1st of the then current year.    Upon that day the court was opened, Hon. Alfred Wolcott, judge of the Seventeenth circuit, presiding; he being a resident of Grand Rapids, which was within the Seventeenth circuit.    Counsel for defendant objected to proceeding with the trial upon the ground that it appeared from the journal that, upon March 29th previous, the circuit court for Allegan county had been adjourned without day, and that there was consequently no authority for calling the jury, or requiring the defendant to go to trial, or proceeding further in the matter.    The presiding judge caused the journal to be presented to Judge Padgham, the judge of that circuit, who held court therein upon said

March 29th, to be signed, if correct, and, if not, to be corrected and signed. Counsel then offered to show that the journal as originally written was as follows, viz., ''Thereupon court adjourned,'' and the testimony was held inadmissible. The journal was afterwards produced, and it showed the following, viz., '' Thereupon court· adjourned until May 1st, 1902,'' over the signature of Judge Padgham. Counsel caused to be inserted in this record, and made a part of the bill of exceptions, a certificate of the clerk to a transcript of the proceedings of March 29th, which includes the statement that the words ''until May 1st'' were added on April 29th, and that ''no written order between March 29th and April 28th has been filed in this court, by the judge thereof, to adjourn said court to a day certain.'' Counsel say that it does not appear that it was a correction entry, but ''appears to have been made to meet the order of the judge of the superior court of Grand Rapids.''

If the question before us can be raised in the face of the signed journal, which, upon its face, shows an adjournment to May 1, 1902, and which can hardly be said to be susceptible to contradiction, it is not a ground for reversal in this cause. It is doubtless true that a court may adjourn *sine die*, and, where its record shows that it has done so, it may be doubtful if the judge can lawfully reopen the term. Counsel have cited several such cases. But that is not this case, under the proof offered. The most that is inferable from the uncontradicted journal is that the court did not adjourn to a day certain, not that it adjourned *sine die*, unless by operation of law. In such a case, as in the case of adjournment to a definite day, the court exists, in ''some respects suspended, but not destroyed.'' See *Eastman* v. *Concord*, 64 N. H. 264 (8 Atl. 822); *People* v. *Bank*, 53 Barb. 412. This case may, in one view, be said to be like one where the judge fails to attend at the time to which it has been adjourned. *Langhorne* v. *Waller's Ex'r*, 76 Va. 213, is such a case. It is fair to say, however, that a statute is construed to so

provide. See, also, *Union Pac. R. Co.* v. *Hand,* 7 Kan. 380.

The case of *People* v. *Sullivan,* 115 N. Y. 190 (21 N. E. 1039), is closely analogous to the present case. In that case a court was adjourned to a day certain, and the judge was detained for two days, when he resumed the hearing of a criminal case on trial at the time of the adjournment. It was said that "every term continues until the call of the next succeeding term, unless previously adjourned *sine die.*" In that case it adjourned to a day certain in the first instance, but no order was made thereafter for two days. And it has been held that, where adjournment is to a day certain, the court may meet and proceed with business at an earlier date. *Cole County* v. *Dallmeyer,* 101 Mo. 57 (13 S. W. 687); *Bowen* v. *Stewart,* 128 Ind. 507 (26 N. E. 168, 28 N. E. 73); *Wharton* v. *Sims,* 88 Ga. 617 (15 S. E. 771),—cited in 1 Enc. Pl. & Prac. 245.

It is contended that 1 Comp. Laws, § 303, controls this, but we think not. If this statute must be held mandatory, and to require an ending of the term at the end of five days, when the judge does not appear at the beginning of term, or even after adjournment (which we do not decide), we cannot assume that the judge was not present each day, although no business was done; and, if so, the clerk and sheriff would be powerless to adjourn without day, as it could not be said that the judge did not attend. There is no presumption in this case that he did not attend. As in the New York case cited, the point is purely technical.

Judge Wolcott was qualified to sit in the cause. It does not appear that the cause was transferred upon the ground that he was not.

*Did the indictment charge an offense ?* We think the question was raised and decided in the *Case of Salsbury.* One feature of it will be noticed, however. It seems to be contended that the indictment is bad for the following reasons: (1) The proposed contract was one

which the council had no lawful authority to make; (2) it was not an official duty of the city attorney to advise the making of an unlawful contract. Counsel say that, under such circumstances, his act would not fall within the stat-ute, which punishes only bribery to perform acts within the officer's lawful authority. In other words, the city attorney might be guilty of bribery in agreeing to advise lawful action, but could not be for advising unlawful action, by the council. The mere statement of such a proposition is sufficient to show its fallacy, as in the claim that one could not be convicted of bigamy because the big-amous relation was with a married woman, and therefore a void marriage. The validity of the act proposed is not the test. The statute punishes the city attorney for offi-cially giving an opinion corruptly. It is upon the theory that his opinion may be expected to influence the council, alderman, or other officer. It does not depend upon the goodness or badness of the advice, or whether it favors or opposes a given measure, but upon the intent and corrup-tion involved. Again, it is as much an official duty to advise against a measure upon the question of authority on the part of the council as any other. Here the defend-ant is charged with bribing Salsbury to advise a contract which he now claims was void, but which he then paid for advising to be valid, and his counsel claim immunity upon a ground which intensifies his turpitude. The stat-ute under which the defendant is prosecuted makes no such distinction. We think, as we said in our former opinion, that this measure was one which might come offi-cially before the city attorney, which is all that was nec-essary.

We have not overlooked the recent case of *State* v. *Butler*, 178 Mo. 272 (77 S. W. 560). That case arose upon an ordinance passed by the St. Louis common coun-cil. The defendant was charged with an attempt to bribe a member of the board of health by offering him $2,500 if he would vote as a member of such board to accept a certain bid for the reduction of the garbage of the city. The

court found that the ordinance conferring authority upon the board of health to let such contract was invalid and conferred no power upon the board, and therefore that the acceptance of the bid was a matter that did not by law come before the board, and no offense could be committed by bribing a member to vote on such a proposition. That case asserts that, under the terms of the statute,—

"It is an essential element of the offense charged that there must be a valid law in existence at the time of the offer to bribe, authorizing and requiring the officer to act. Without this, his action is not subject to influence, and there can be no bribery, within the terms of the statute."

In the case of *State* v. *Ellis*, 33 N. J. Law, 103 (97 Am. Dec. 707), the following were the facts: Application was made to the common council of Jersey City for the privilege of laying a railroad on a public street, and defendant offered a bribe to one of the councilmen to vote in favor of the application. The defense was made that the council had no power to grant the application; hence there could be no bribery. The court held otherwise. It would seem that the present case is upon all fours with the New Jersey case above mentioned. Furthermore, that case is distinctly approved in the case of *State* v. *Butler*, as appears from the following quotation:

"It was clearly correct as to the case before it, and is in no way in conflict with the conclusions reached in this case."

The opinion in *State* v. *Butler* emphasizes this rule as laid down in the New Jersey case by saying:

"In the first place, the indictment in that case was for a common-law misdemeanor; but, aside from that, the charge contained all the essential elements of bribery. It was immaterial whether the action of the council could be enforced. It was a matter pending before the council, upon which the members had a right to vote. It was not necessary 'that the vote, if procured, would have produced the desired result.' The simple question was, Was the member of the council authorized to vote upon the matter pending? It is very frequently of greater import-

ance to the public for a member of the city council to vote upon a question pending where the effort is to secure unauthorized legislation than upon matters fully authorized. Under such conditions the members of the council are not only authorized to vote, but it is their duty to vote, and to vote 'No,' and every attempt to influence their action by the offering of a bribe in respect to such vote constitutes the offense of bribery. That the decision in that case is not pertinent to the proposition now being discussed, we think, is too plain for discussion."

In *Glover* v. *State*, 109 Ind. 391 (10 N. E. 282), defendant, a school trustee, was indicted for accepting a bribe to enter into a contract for the purchase of furniture and supplies for his school. His defense was that the contract, as reduced to writing, was not binding. In commenting on this case, the opinion in *State* v. *Butler* says:

"The contention of the appellant was that the contract, as reduced to writing, was not binding upon the school township. The court, upon that proposition, very correctly said:

"'It is not material whether the contract entered into could have been enforced against the township or not. If it was already executed, and the amount paid out of the township funds, of course, it could not be material whether or not the contract was in writing. Nor could it be material in any event. The question is not whether appellant entered into a contract binding upon the township, but whether he accepted the bribe.'"

The other questions upon this branch of the case need not be considered, in view of the former opinion.

*Was there competent proof of the corpus delicti?* Counsel say that the only evidence that the defendant bribed Salsbury to give an opinion, etc., is to be found in extrajudicial confessions testified to by Cameron and Garman, who were *particeps criminis*. If this is to be considered a case in which we can separate the *corpus delicti* from the person who committed the offense, as may be done in such offenses as homicide or larceny, all testimony going to show that Salsbury received a bribe, as charged, is admissible, and we think that there is evidence tending

to show it aside from McGarry's confessions. Much of it is circumstantial, but it is none the less admissible, and adequate if sufficient to exclude a reasonable doubt. Counsel seem to argue the question as though defendant's connection with the bribery were a part of the *corpus delicti*, and the point really appears to be that only Garman and Cameron connect defendant with it. We are of the opinion that there is other circumstantial evidence bearing upon the question. There is the fact of the conspiracy, and proof of the various acts to carry it out, in which Garman, Cameron, Taylor, Salsbury, and McGarry participated. That McGarry took part in some capacity can hardly be questioned, and it was for the jury to determine whether he was an accomplice, or merely a lawyer honestly and legitimately adhering to his professional rights and duties. What McGarry said in the plotting, planning, and carrying out the plan is distinguishable from confessions. It was *res gestœ*, instead of an admission, and does not fall within the definition of confessions, although it might be statements of transactions to his confederates, if they were transactions in furtherance of the enterprise. It is not necessary to find a witness who overheard the interview between defendant and Salsbury, and saw the money paid over. We have no difficulty in concluding that there was evidence outside of confessions of the defendant upon both propositions, viz., that Salsbury was bribed, and that defendant participated in it, and it is not for us to review the question of fact.

*Rulings upon the subject of conspiracy:* Counsel admit that it was unnecessary to set up a conspiracy in the indictment, and apparently concede that it was competent to show the circumstances which led up to the alleged bribery. If there was a conspiracy, it was part of the *res gestœ*, and admissible. They contend, however, that, while it was competent to show a conspiracy between defendant and others to bribe Salsbury, a conspiracy to do anything else or to bribe others was not admissible.

We think that it was competent to show a conspiracy to corruptly obtain municipal action, of which the alleged bribery of Salsbury was an incident, and upon which it threw light.   Such evidence tended to explain the relations of the parties, as well as their acts; and, to this end, it was competent to show the early transactions, before those originating the plot knew the defendant, and before he heard of it, as well as the things that were done by them and him as long as he continued to aid it, although after Salsbury had yielded, and received the money promised from the defendant.   Hence conversations between the conspirators Garman and Cameron in furtherance of the project were admissible, although defendant was not present.   The plans of these parties, like their acts, need not have been made in the presence of all, to be admissible, so long as they are shown to have been in the furtherance of the project, as contradistinguished from mere relation of transactions and acts that were past.   Such testimony is not hearsay.   Counsel complain of the introduction of such evidence before there was other evidence showing defendant's complicity; but this goes to the order of proof, which is to some extent, if not wholly, within the judicial discretion, which we think was not improperly exercised in this instance.   There was abundant evidence in the case to show the conspiracy, and defendant's connection with it; and the case should not be reversed on so technical a ground as that the order of proof was not the usual or most approved, if such were the case, which we do not imply.

Counsel call attention specifically to several alleged errors in this connection.   They concede that Garman and Cameron gave testimony tending to show that defendant became connected with them as early as June 5th.   This was direct, positive, and competent proof.   A letter was introduced, dated at Grand Rapids on June 14th, from Cameron to Garman, and stated what had been done with relation to Salsbury.   It is claimed that this was a mere relation of events, and inadmissible.   It was clearly

admissible as a part of the transaction.   There was much other testimony which comes within the same ruling.   As counsel say, "This class of errors permeated the case." We cannot discuss each separately, and they have not. So far as our attention has been called to them, we think they were not errors.

A motion was made to exclude all witnesses during the trial, and the witnesses were "put under the rule."   On Garman's cross-examination, before he was interrogated by the prosecuting attorney, it appeared that he had in his possession, for the purpose of indexing, some of the type-written stenographer's notes of Cameron's testimony, and talked about it with one of the counsel for the people. The court was asked to exclude all testimony from the witness, and this was refused, and he was permitted to testify.   The court was clearly right.   See 8 Enc. Pl. & Prac. 93, 94, and notes.

Error is assigned upon the testimony of Mrs. Garman, who stated that she knew that, when her husband left New York for Michigan, he had no considerable amount of money, and that on his return, a week or more later, she saw him have $700.   The value of this testimony may be small, in view of the possibility of his getting money elsewhere, but it is unlike the statements made regarding money in possession.   Such would be hearsay.   That cannot be said of this.   We think no injury could result from the testimony, and that it was admissible as a fact consistent with the claim that he received $1,000 a short time before.

No error was committed in indorsing the name of witness Wismer on the information, upon the showing made. We do not discover any reason why the judicial discretion should be questioned.

We think it unnecessary to discuss the exclusion of certain journal entries, or the claim that the prosecuting attorney commented on defendant's omission to testify.

We think that no such inference was necessary from the language used.

Error is assigned upon the following remarks of counsel for the people in his argument to the jury:

"'Now, gentlemen, there is Mr. Cummings, there is Mr. Taylor. If Cameron and Garman don't tell the truth about that interview, why didn't they bring Cummings and Taylor to testify about it?   *   *   *'

"And, again, Mr. Ward said, 'Ah, gentlemen of the jury, you can see why it is these men are not called. Even the deposition of Mr. Gates is not here any more.'"

There are many cases which justify comment upon the failure of a party to produce particular witnesses, and the rule extends to criminal cases. 3 Rice, Ev. 29; *State* v. *Ward*, 61 Vt. 153 (17 Atl. 483). It is not an unqualified right, and depends upon the circumstances of the case. We think it applies to a deposition taken by the party and not used, and to accomplices and other witnesses within their control, or with whom they are or have been closely associated, especially where such witnesses are in a position to speak on matters damaging to such party, already in evidence. 1 Starkie, Ev. 34; 3 Id. 487. See 2 Enc. Pl. & Prac. p. 714, and notes, where cases are cited, and our own cases of *Gavigan* v. *Scott*, 51 Mich. 373 (16 N. W. 769); *Cook* v. *Insurance Co.*, 86 Mich. 554 (49 N. W. 474). This record does not justify a reversal upon this ground.

The contention is made that the court erred in directing the jury that defendant's conviction did not necessarily depend on their ability to find that he paid the money to Salsbury on the 7th of July, and that it would be sufficient if they were convinced that it was paid on some other day about that time. This is upon the claim that there was no evidence to show that it was paid upon any other day than that stated by McGarry in the alleged conversation with Garman and Cameron. The defendant offered considerable testimony tending to show that he was absent on the 7th of July, and the jury were at liberty to find that

it was not paid that day, although believing the statements of Garman and Cameron that defendant had so stated, and to find from the circumstances shown that the money was paid about that time, although not upon that day. Under such circumstances, the court should not have said that the people must fail if the jury could not find that it occurred upon that particular day. The charge was laid under a *videlicit*, and such an inference was permissible under the proof.

We think it competent to show the previous misstatements of the defendant, if there were such, in relation to matters material to this case, although made as a witness upon the Salsbury trial, especially if contrary to his theory of defense in the pending case.

It is unnecessary to comment further upon the alleged errors in the charge. The claims are not justified by the record, and no error was committed.

There are many assignments of error based upon refusals of requests to charge. These requests number 153. They are argumentative and full of repetitions, and many of them might more properly go from counsel direct to the jury. There would, of course, be an added weight if presented through the court, but it is not a commendable practice for a court to allow himself to be thus made the mouthpiece of counsel. Some of the points raised are covered by what has been said, and others are covered by the charge. Some cannot be sustained as proper directions to be given to the jury. We have examined such of them as counsel have discussed, and find nothing in them calling for a reversal of the cause.

There are some other points made, but nothing which calls for a reversal of the case.

The conviction is affirmed.

MOORE, C. J., CARPENTER and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.