### PEOPLE v. MOL.

1. JURORS—VOIR DIRE—QUESTION AS TO PREVIOUS VERDICT.
   Jurors cannot be asked on their voir dire whether, from the testimony presented in the previous trial of another for bribery arising out of the same conspiracy, they formed an opinion respecting the guilt of accused, since such question would open the door to inquiries which would disclose the precise grounds upon which they reached the conclusion of guilt.  3 Comp. Laws, § 10239.

2. SAME—DISQUALIFICATION— PREJUDICE — ISSUES IN PRIOR CASE.
   Where several are charged with bribery arising out of the same conspiracy, and the same evidence is relied on to sustain a conviction against each, jurors who have sat in the trial of certain of the conspirators previously tried are subject to challenge for cause.  GRANT, J., dissenting.

3. CRIMINAL LAW—QUESTIONS REVIEWABLE — DECISION AS TO FAVOR OF JURORS.
   This court has a right to review a decision as to the favor of a juror when it raises a legal question.

4. SAME — EVIDENCE — ACTS AND DECLARATIONS OF CO-CONSPIRATORS.
   In a prosecution for bribery arising out of a conspiracy, evidence of a conversation had between accused and another of the conspirators, after the conspiracy was abandoned, relating to the re-election of the other as city attorney, for the avowed purpose of avoiding an exposure of the crime, which would be more probable if a third person were elected to such office, was admissible.

5. SAME.
   Where a conspiracy is established, the declarations and acts of any of the co-conspirators before the conspiracy is abandoned are admissible against each.

6. BRIBERY—OFFICER—MATTER OFFICIALLY COGNIZABLE.
   Where a proposition to let a contract for waterworks was one which might come before a city council for official action, the fact that the council had no authority to make the contract did not prevent the payment of money to councilmen to influence their action on the same from constituting a violation of 3 Comp. Laws, § 11312.

Exceptions before judgment from superior court of Grand Rapids; Newnham, J. Submitted June 17, 1904. (Docket No. 193.) Decided October 4, 1904.

James Mol was convicted of accepting a bribe. Reversed.

*Smedley & Corwin,* for appellant.

*William B. Brown,* Prosecuting Attorney, and *Charles E. Ward,* Assistant Prosecuting Attorney, for the people.

CARPENTER, J. Respondent was convicted in the superior court of Grand Rapids of the charge of corruptly accepting $350 to vote as an alderman in favor of the city of Grand Rapids entering into the same water contract which was before this court in *People* v. *Salsbury,* 134 Mich. 537 (96 N. W. 936), and *People* v. *McGarry,* 136 Mich. 316 (99 N. W. 147).

Six of the men who sat as jurors on respondent's trial had only a few days before assented to a verdict of guilty in the case of *People* v. *Jacob P. Ellen.* Respondent exhausted his peremptory challenges. He challenged these jurors for cause. The trial court overruled his challenge. Was this ruling error?

The informations in the *Ellen Case* and in this case, except in the name of the respondents, were exactly alike. The name of every witness who testified in this case was indorsed upon the information in the *Ellen Case.* The principal witness in each case was Lant K. Salsbury. He gave substantially the same testimony in each case. In this case he testified to bribing Ellen. In the *Ellen Case* it is to be inferred that he testified to bribing Mol. Most of his testimony and substantially all the corroborating testimony consists of the details of the conspiracy, admissible alike in each case. In that case it is to be inferred that he testified more particularly about Ellen, and in this case more particularly about Mol. The difference between the

two cases, then, consists in the particular application of substantially the same testimony to different defendants, together with the fact that in the *Ellen Case* there is opposed to it the denial of Ellen, and in this case there is opposed to it the denial of Mol.

Five of these jurors, in reply to questions on their voir dire, said they had formed no opinion of the guilt or innocence of respondent. One of them said: "If the case is just alike, I have; if it is not, I have not." Did the court err in deciding that these jurors were qualified?

If this decision is to be governed by common-law principles, the decision of the trial judge was correct.

It was resolved by all the judges in the *Regicide's Case,* 5 How. St. Tr. 978, in the year 1660:

"That if several persons be indicted together in one indictment for one crime, in case some of them be found guilty by one jury, and afterwards some of the same jury be returned for trial of others in the same indictment, it is no challenge for those prisoners to say that those jurors have already given their verdict and found others guilty who are indicted in the same indictment for the same offense; for * * * in the law it is the several indictment against every one of them, and the crime is several, and one may be guilty and not another, and the jury are to give their verdict upon particular evidence against every several person, and therefore the finding one guilty is no argument or presumption that those jurors will find another guilty."

. In the trial of Peter Cook at the Old Bailey, before Lord Chief Justice Treby, in 1696 (13 How. St. Tr. 313), counsel for respondent said:

"Here are some persons returned upon this panel that were formerly jurors in a cause that was tried for the same species of treason that this gentleman, the prisoner, is charged with in this indictment; and I think the witnesses at that trial did mention in their evidence my client as being present at those very consults about which they gave their evidence. These gentlemen gave credit to those witnesses and found the verdict against the person then accused. We humbly submit it to your lordship and.

the court whether we may not for this cause challenge this person as not indifferent, it being for the same cause and consult that the other was tried for."

To this the Lord Chief Justice replied:

"Well, there is nothing in it."

These decisions, which have been followed by some courts in modern times (see *U. S.* v. *Wilson*, Baldw. 84 [Fed. Cas. No. 16,730]; *Dew* v. *McDivitt*, 31 Ohio St. 139; *State* v. *Williams*, 31 S. C. 238 [9 S. E. 853]; *Thomas* v. *State*, 36 Tex. 315; *Bowman* v. *State*, 41 Tex. 417), were pronounced before there was any judicial acceptance of our modern conception of a jury as a tribunal which should dispose of a controversy solely on the testimony introduced before them. When they were made, while jurors heard testimony produced by the parties, their verdict was not, as we might infer from the rule in the *Regicide's Case*, based solely upon that testimony. They might, as is shown by the following authorities, in accordance with the ancient practice still in part existing, use in the decision of a controversy their private knowledge of facts, or, it seems, their private information concerning them. See 2 Pollock & Maitland, History of Eng. Law, p. 622.

In *Bushell's Case* (this case arose from an imprisonment of the jurors who had acquitted William Penn of a criminal charge), decided in 1670 (see 6 How. St. Tr. pp. 1010, 1011), the right of a court to fine and imprison a juror for rendering a verdict in favor of the defendant in a criminal case, against the manifest testimony, was judicially denied on the ground that—

"The judge * * * can never know what evidence the jury have. * * * Being returned of the vicinage whence the cause of action ariseth, the law supposeth them thence to have sufficient knowledge to try the matter in issue, though no evidence were given on either side in court. * * * They may have evidence from their own personal knowledge by which they may be assured, and sometimes are, that what is deposed in court is absolutely false."

In the *Case of Tutchin*, 14 How. St. Tr., at page 1100, decided in 1704, the issue in the case was whether the defendant was the author of a certain libel. A person called as a juror stated that he had read the alleged libelous publication, and publicly disallowed them, and he did not doubt defendant was the author of them. The attorney general answered:

"If this gentleman knows him to be the author of them, he is proper to be on the jury, for the jury are by law to be of the neighborhood of the place where the fact is alleged to be done, because they are presumed to know what is done there."

It is to be inferred that this argument was approved by Lord Chief Justice Holt, who presided at the trial.

As the juror at the common law was not compelled to render his verdict on the testimony given in court, it was no ground of challenge, as some courts have held (see *People* v. *Vermilyea*, 7 Cow. 108), that he had knowledge that would prevent his rendering such a verdict. At the common law the challenges to jurors for affection or partiality were of two kinds: (1) "For principal cause;" (2) "to the favor." A challenge is called principal "because, if it be found true, it standeth sufficient of itself, without leaving anything to the conscience or discretion of the triors." 1 Co. Litt. 156b. Relationship to one of the parties or interest in the subject-matter of the litigation furnish illustrations of grounds for challenges for principal cause. Challenge to the favor (and the challenge under consideration is challenge to the favor, *Stephens* v. *People*, 38 Mich. 739) "is when the party alleges any such exception against one or more of the jurors, which is not forthwith sufficient upon acknowledgment of the truth thereof, but rather arbitrable and considerable by the rest of the jurors." *State* v. *Sawtelle*, 66 N. H. 508 (32 Atl. 831). "It showeth causes of favor which must be left to the conscience and discretion of the triors, upon hearing their evidence, to find him favorable or not favorable." 1 Co. Litt. 157b.

"In this form of challenge probable circumstances of suspicion, such as great intimacy with one party, or strife and quarrels with the other, any acts or sayings indicating affection for one or malevolence toward the other, in short, anything tending to show a motive on the part of the juror to favor one party or to wrong the other, may be alleged and proved." *State* v. *Sawtelle*, supra.

The question raised by this challenge was not that a juror had knowledge or opinions which would prevent his deciding the case according to the evidence, but it was that because of affection toward one party or of hatred toward the other, or because of some other similar motives, he would not decide the case according to the truth. This is illustrated by the following decisions:

In 1429 (see 7 Hen. VI. 25, pl. 8), in an action of replevin, a juror was challenged "for that he was favorable." Babington, C. J., submitting the questions to the triors, said:

"Do you know, triors, what is meant by favorable? He is favorable who, whether the matter is true or false, will pass for one or the other. * * * But, if one has said twenty times that he will pass for the one or the other party, you will inquire upon your oath whether the cause is for the affection he has for the party, or for the knowledge he has of the matter in issue; and if it is for the affection he has for the party, then he is favorable, but otherwise he is not."

Said Newton, J., in a case decided in 1442, reported in 20 Hen. VI. 40, pl. 9 (see *State* v. *Sawtelle*, supra):

"And if a juror say that he will pass for the plaintiff, his saying is no cause for withdrawing him, unless it is found by the triors or by the court that he said this more for favor than for the truth of the matter."

In *Rex* v. *Edmonds*, 4 B. & Ald. 490, decided in 1821, Abbott, C. J., speaking for the court, said:

"The language of Mr. Sargeant Hawkins upon this subject (4 Hawkins, Cr. Pl., bk. 2, chap. 43, § 28) is that, if the juryman 'hath declared his opinion beforehand that the party is guilty, or will be hanged, or the

like, yet if it shall appear that the juror hath made such declaration from his knowledge of the cause, and not out of any ill will to the party, it is no cause of challenge.' So that, in the opinion of this learned writer, the declaration of a juryman will not be a good cause of challenge, unless it be made in terms or under circumstances denoting an ill intention towards the party challenging. A knowledge of certain facts, and an opinion that those facts constitute a crime, are certainly no grounds of challenge; for it is clearly settled that a juryman cannot be challenged by reason of his having pronounced a verdict of guilty against another person charged by the same indictment.'"

The supreme court of New Hampshire was justified in saying in *State* v. *Sawtelle*, supra (this case contains a careful and painstaking analysis of nearly all the common-law decisions on the subject, and it has been of great aid in the preparation of this opinion):

"In ancient times the law esteemed those who, being without motive to favor either party, had immediate and personal knowledge of the facts in dispute, to form the best conceivable tribunal for the determination of the issue. * * * The common law esteems jurors indifferent who have no motive to find for or against either party. All the valid objections to their competency, propter affectum [that is, for affection or partiality], whether for principal cause or for favor, rest on a motive presumed by law, or proved as a fact, to find for one or the other party."

We are forced to the conclusion, therefore, that our conception of a jury as a tribunal who should dispose of the case solely from the testimony produced before them did not come from the ancient rules of the common law. We are bound to say that the provision in the Constitution of Michigan (article 6, § 28), which, like the provision in other American constitutions (see Constitution of United States), gives the accused a right to trial by "an impartial jury," gave him a right to trial by jurors qualified to dispose of the case upon the testimony presented to them. A jury is not impartial "whose members are already so impressed with the guilt of the accused that evidence will be required to overcome such impressions." See *Stephens* v. *People*,

38 Mich. 739. · See, also, *Smith* v. *Eames*, 4 Ill. 76 (36 Am. Dec. 515).

The decisions heretofore referred to, which hold that one who had participated in a trial of another person accused by the same indictment is not disqualified to sit as a juror, which proceed, as they do, upon the ground that a juror need not be qualified to determine a case upon the testimony, have therefore no application to the practice required by our Constitution; and it is our duty, as we have already before declared, to disregard them. See *People* v. *Troy*, 96 Mich. 530 (56 N. W. 102).

The question, then, is, not what was the practice at common law, but were those jurors who had agreed to a verdict of guilty in the *Ellen Case* impartial jurors under the meaning of our Constitution? Of course, the mere fact that they formed an opinion, if that opinion would not influence their verdict, would not disqualify them. See *People* v. *Quimby*, 134 Mich. 625 (96 N. W. 1061). But in the *Ellen Case* it was their duty to consider testimony which indicated both the guilt of Ellen and respondent. That testimony convinced them beyond a reasonable doubt that Ellen, who had the opportunity of being heard, was guilty. Are we warranted in assuming that they reached no conclusion respecting the guilt of respondent, against whom the testimony was almost equally strong, and who was not heard? Can these jurors, having already said that substantially the same evidence which is introduced in this case convinced them of the guilt of Ellen, enter upon the trial of respondent presuming him to be innocent? These questions answer themselves. The jurors who had determined that this evidence proved Ellen's guilt would stultify themselves if they determined that it did not convince them of respondent's guilt. The evidence of respondent's guilt was introduced in the *Ellen Case* as affording additional evidence of the latter's guilt. It was the duty of the jury to give due weight to that testimony. It should be presumed that they did their duty. It is not unfair to presume that in doing this duty they determined

respondent's guilt, for that determination is in harmony with their verdict. If they did in fact make such a determination, I think all will concede that they were disqualified to sit as jurors. While, as I have endeavored to show, the qualifications of jurors are not now tested by the rules of the common law, it is not improper to say that according to those rules a juror was disqualified who had "given a verdict upon the same title or matter." 1 Co. Litt. 157b.

It cannot be denied that it is possible that a juror may be so peculiarly constituted that his rendition of the verdict in the one case would have no influence upon his action in the other. But, in my judgment, this question must be disposed of upon the assumption that all jurors possess the characteristics common to ordinary men. We certainly cannot permit all jurors who had participated in the first trial to sit in the second, upon the assumption that their natures were so extraordinary that they had formed no disqualifying opinion. That assumption would compel the accused to be tried by men who had prejudged his case. Neither is it possible to determine by an investigation whether jurors have formed conclusions in the first case which disqualify them from sitting in the second. From the nature of the question to be investigated, no valuable testimony can be obtained, except from the jurors themselves. You cannot ask the juror whether, from the testimony presented in the first trial, he formed an opinion respecting the guilt or innocence of the accused, without opening the door to inquiries which will disclose the precise grounds upon which he reached the conclusion of guilt. If the practice at common law permitted any such investigation, which I doubt (see *Rex* v. *Edmonds, supra*), though it was adopted in *U. S.* v. *Wilson*, Baldw. 84 [Fed. Cas. No. 16,730], such practice is now prohibited by our statute. Section 10239, 3 Comp. Laws. See *Welch* v. *Publishing Co.*, 83 Mich. 661 (47 N. W. 562, 11 L. R. A. 233, 21 Am. St. Rep. 629).

I think we are bound to conclude, therefore, that persons

who have sat as jurors in a case where they had an opportunity to judicially determine upon substantially the same testimony the question of respondent's guilt or innocence are not the "impartial" jurors to which he is constitutionally entitled, and that, therefore, the court erred in the ruling under consideration. These views are in harmony with our own decision in *People* v. *Troy*, 96 Mich. 530 (56 N. W. 102), and with the following cases: *Smith* v. *State*, 55 Ala. 1; *Wickard* v. *State*, 109 Ala. 45 (19 South. 491); *Brown* v. *State*, 104 Ga. 736 (30 S. E. 951); *Garthwaite* v. *Tatum*, 21 Ark. 336 (76 Am. Dec. 402); *Railway Co.* v. *Smith*, 60 Ark. 221 (29 S. W. 752); *Swarnes* v. *Sitton*, 58 Ill. 155; *Apperson* v. *Logwood*, 59 Tenn. 262.

Neither may it be contended that the question we have considered was not fairly presented to the trial judge. After respondent's counsel had exhausted his peremptory challenges, he urged in support of his challenge to the jurors who had sat in the *Ellen Case* that the witnesses who had testified in the *Ellen Case* would be the witnesses in this case, and that their testimony would be substantially the same. The court overruled this challenge, not upon the ground that counsel was incorrect in his statement, but because the two cases were not "identical * * * in the main point;" that is, as stated by counsel for the people:

" The issue in that case was whether Mr. Ellen was bribed. The issue in this is whether Mr. Mol was bribed. One might be guilty, and the other innocent."

In short, the trial judge had occasion to decide, and did decide, the very question we decide, viz., Does the legal difference between the two issues which unquestionably exists—the fact that in the one case the issue relates to the bribery of Ellen and in the other to the bribery of Mol—render jurors who sat in the one case competent to to sit in the other? He held that it did. We are compelled to hold that it did not.

Nor can it be said that, because at common law the decision of the triors whose determination whether jurors were favorable or not was final, the decision under consideration cannot be reviewed by this court.   It is settled that we have a right to review those decisions when they raise legal questions.   See *Stephens* v. *People* and *People* v. *Troy*, supra.

Respecting the other questions raised in the case I concur in the opinion of my Brother GRANT.   I think, for the error pointed out, the conviction should be set aside and a new trial ordered.

MOORE, C. J., MONTGOMERY and HOOKER, JJ., concurred with CARPENTER, J.

GRANT, J. (*dissenting*).   In the year 1900 respondent was an alderman of the city of Grand Rapids.   His prosecution arose out of the notorious water boodle scheme, the design of which was to secure a contract with the city to supply it with water from Lake Michigan.   The information charges that respondent—

"Did corruptly accept from, to wit, Lant K. Salsbury, a gift and gratuity, to wit, $300, under an agreement and with the understanding that the vote, opinion, and judgment of him, the said James Mol, as such alderman, should be given in a particular manner and upon a particular side, to wit, in favor of said city of Grand Rapids entering into a contract with some person, firm, or corporation, under which contract said city of Grand Rapids should receive and pay for water to be conveyed from Lake Michigan for municipal and other uses, the same being a question and proceeding then brought and to be brought before him, the common council of the city of Grand Rapids, and being a question which might by law be brought before him, the said James Mol, in his official capacity as such alderman of the city of Grand Rapids aforesaid."

That part of the statute material to the case reads as follows:

"Every executive, legislative, or judicial officer, who

shall corruptly accept any gift or gratuity, or any promise to make any gift, or to do any act beneficial to such officer, under an agreement, or with an understanding that his vote, opinion, or judgment shall be given in any particular manner, or upon a particular side of any question, cause, or proceeding, which is or may be by law brought before him in his official capacity, * * * shall be punished." 3 Comp. Laws, § 11312.

Respondent was convicted. The facts material to the points raised will be stated in connection therewith. For a general statement of the conspiracy see *People* v. *Salsbury*, 134 Mich. 537 (96 N. W. 936), and *People* v. *McGarry*, 136 Mich. 316 (99 N. W. 147).

1. The first most important question for determination is the competency of certain jurors. Two trials growing out of the same conspiracy had preceded this one. The first was the case of *People* v. *Ellen*, charged with accepting a bribe. The other was the case of *People* v. *Albers*, ante, 678 (100 N. W. 908), charged with perjury in his testimony upon his trial for attempting to bribe another alderman. In both of those cases, as in this, evidence was introduced to establish the conspiracy, substantially the same in all the cases. In addition to those cases, Salsbury, McGarry, and Taylor had been convicted, and several aldermen and other city officers had confessed and pleaded guilty. These things were matters of common knowledge to all intelligent inhabitants of the city and the county of Kent.

Of the jurors who were summoned upon the trial of respondent, two had served upon the trial of Albers, five had served upon the trial of Ellen, and one had served upon the trial of both. It is strenuously urged in behalf of the respondent that these jurors were disqualified by reason of their service on the other trials.

We may dispose of the alleged disqualification of the jurors in the *Albers Case* by saying that that case and the case of respondent are not identical, and the mere fact that in the *Albers Case* the testimony to establish the conspiracy—which we hold in an opinion handed down

herewith (see *People* v. *Albers*, supra) was material to
the issue in that case—was the same as that in the respond-
ent's case did not per se disqualify the jurors in this case.
That case did not involve the guilt of the respondent in
this.

If, as counsel assume, the issue in the *Ellen Case* was
identical with the issue in respondent's case, their conten-
tion should undoubtedly prevail. But it evidently was
not. Ellen was convicted of corruptly receiving a certain
sum upon a promise to vote for the water deal, while re-
spondent was convicted of receiving another certain sum
upon a separate and distinct promise to vote for the same
deal. It did not appear that respondent had talked with
Ellen about it, or that he even knew that Ellen had been
bribed or had made any promise. Salsbury testified that
he told respondent that he did not want him to talk with
any one about it.

Counsel cite and rely upon *People* v. *Troy*, 96 Mich. 530
(56 N. W. 102), and other similar cases. Troy and an-
other united in assaulting an officer. One was charged
with assault, and the other with resisting an officer. The
acts alleged to constitute each offense were the same, and
identical in time and place, and the two offenders acted in
unison. In the light of these facts we said:

" Where the issue is the same in both cases, it is but fair
to the respondent that he have another panel of jurors to
try his cause."

Opinions upon conceded or uncontroverted facts will not
disqualify. 17 Am. & Eng. Enc. Law (2d Ed.), p. 1148;
*State* v. *Wells*, 28 Kan. 321; *State* v. *Sorter*, 52 Kan.
531 (34 Pac. 1036); *Conatser* v. *State*, 80 Tenn. 436.

The jurors were not asked whether they had formed an
opinion as to the existence of a criminal conspiracy. Its
existence was not disputed upon the trial. The only ques-
tion was the connection of the respondent with it. If an
opinion upon this question would have disqualified, a jury
of sufficient intelligence could not have been found in the
county.

One may believe that a murder has been committed, and not be disqualified. *Cargen* v. *People*, 39 Mich. 549.

One may believe that a burglary has been committed, and not be disqualified to serve as a juror, if he have no disqualifying opinion as to whether the respondent committed the crime. *Stewart* v. *People*, 23 Mich. 63 (9 Am. Rep. 78).

So the circumstances surrounding the burning of a building may be such as to leave no reasonable doubt that the crime of arson was committed; but the belief that such crime had been committed would not per se disqualify one from acting as a juror, if he had no positive opinion that the respondent was the guilty party. These illustrations might be multiplied.

Though one has served in similar cases, he is not disqualified, unless the opinion he has formed is such as to repel the presumption of innocence. 17 Am. & Eng. Enc. Law (2d Ed.), p. 1140.

All these jurors testified that they entertained no prejudice against respondent, and had formed no such opinions from the testimony given upon the other trial of Ellen, or from what they had heard, as would prevent them from giving him a fair and impartial trial. The situation is well shown by the cross-examination of one of these jurors:

" From what I heard in that trial, and from what I had learned before that trial commenced, either by reading or conversation, I formed an opinion in regard to some of the other respondents that were arrested. It would not require evidence on the part of this respondent to remove that impression. It has nothing to do with him. I neither formed nor expressed an opinion in any way, shape, or manner as to the guilt or innocence of Mr. Mol. I did not form any opinion as to all that were charged. Of course, we must admit the guilt of those we tried, and also those that acknowledged it—those that pleaded guilty. We presume the others are innocent until they are tried. As to the rest, I have no fixed opinion of any of them, none but what I could lay aside at the commencement of every one of these trials. I could start in this case as

137 MICH.—45.

though I hadn't heard a word. All I have heard does not prejudice me at all in regard to Mr. Mol."

Yet this juror was challenged for cause. The statute of Michigan makes a juror competent, though he has formed an opinion, if he declare upon his oath that he verily believes that he can render an impartial verdict, and the court shall be satisfied that he does not entertain such a present opinion as would influence his verdict. 3 Comp. Laws, § 11947.

All the jurors in this case so declared, and the judge passed his judgment upon their qualifications.

" The opinion entertained by a juror, which disqualifies him, is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *People* v. *Barker*, 60 Mich. 277 (27 N. W. 539, 1 Am. St. Rep. 501).

No juror in this case had formed any such opinion.

Appellate courts cannot substitute their own judgment of the qualification of jurors for that of the circuit judge, where different conclusions may be drawn from the juror's examination. The candor, character, and manner of the juror are elements for the consideration of the trial judge in determining his competency. The question is often difficult of determination, and only when the juror's examination shows conclusively that he has a disqualifying opinion should the appellate court reverse the decision of the trial court.

Upon this subject Chief Justice Waite, in *Reynolds* v. *United States*, 98 U. S. 145, said:

" It is clear, therefore, that upon the trial of the issue of fact raised by a challenge for such cause, the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. No less

stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for a new trial because the verdict is against the evidence.   It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial.   The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court.   *   *   *   In considering such questions in a reviewing court, we ought not to be unmindful of the fact we have so often observed in our experience, that jurors not unfrequently seek to excuse themselves on the ground of having formed an opinion, when, on examination, it turns out that no real disqualification exists.   In such cases the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record.   Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case.   The affirmative of the issue is upon the challenger.   Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside, and it will not be error in the court to refuse to do so."

I hold that there was no error in holding the jurors qualified.

2.  Salsbury was permitted to testify, under objection and exception, to a conversation between himself and respondent after the abandonment of the conspiracy, and fixed the time and place.   One De Vries testified that he took Mr. Salsbury to respondent's house at that time. The objection to this testimony is that it comes within the rule that acts and declarations made after the consummation or abandonment of the conspiracy are inadmissible. This conversation related to the re-election of Salsbury as city attorney, for the avowed purpose of avoiding an exposure of the crime, which would be more probable if another should be elected city attorney.   This conversation does not come within the rule.   It was a conversation between two conspirators, devising means to avoid exposure.

3. One Ghysels testified that Salsbury paid him $300 for his vote. He, also, was one of the conspirators and an alderman. When the conspiracy is established, the declarations and acts of the co-conspirators, before the conspiracy is abandoned, are competent. *People* v. *Salsbury* and *People* v. *McGarry*, supra. Under this same rule, declarations and conversations between other co-conspirators were competent.

4. It is next urged that the matter could not legally be brought before the common council, and that therefore there was no crime. This question is ruled by the cases of *People* v. *Salsbury* and *People* v. *McGarry*, supra.

The conviction should be affirmed. ˙