Charles Firby, colored, v. The State.

filing of a record in this Court, before the Clerk of the Court. in which it is so filed. We hold, therefore, that the motion to dismiss the writ of error should be disallowed.

## CHARLES FIRBY, colored, v. THE STATE.

1. CRIMINAL LAW. Indictment entitled by mistake of the wrong term. The statement of the wrong Term of the Court at the head of an indictment, is no part of, and will not vitiate it, the record showing when it was found.

2. SAME. Plea of Insanity. When. And how it must be made. Evidence. Under a general plea of not guilty, evidence cannot be introduced tending to show that the prisoner was insane at the time of the killing with a view under the Act of 1871, Ch. 138, §7, to his confinement in the Asylum for the Insane, until his recovery, for trial, but to entitle him to the benefits of this Statute, the question of his sanity should be first tried and determined, and confined to his mental condition at the time of the trial, and not to the time of the homicide.

Cases cited: Mitchel v. The State, 8 Yerg., 527–8; McBean v. State, 3 Heisk., 20; Dove v. The State, 3 Heisk., 370; Crenshaw v. The State; Martin & Yerger, 123.

Code cited: §1554–7.

Statute cited: Act of 1871, Ch. 138, §7.

Charles Firby, colored, *v.* The State.

3. SAME. *The Supreme Court will not reverse. When.* The Court say, with the two verdicts against the prisoner, and their approval by the presiding Judge, we must see that they have come to an erroneous conclusion upon the facts before we can reverse.

Cases cited: Hill *v.* The State, 3 Heisk., 320; Jones *v.* The State, 3 Heisk., 451.

---

FROM DAVIDSON.

---

Appeal from the Criminal Court. THOS. N. FRAZIER, Judge.

Attorney-General HEISKELL for the State.

No counsel for Firby.

DEADERICK, J., delivered the opinion of the Court.

At the January Term, 1874, of the Criminal Court of Davidson County, Firby was convicted of murder in the second decree, in killing his wife, and sentenced to twenty years confinement in the penitentiary.

Upon an appeal to this Court, the judgment of the Criminal Court was reversed, and the cause was remanded for a new trial.

At the September Term, 1874, of said Criminal Court, the prisoner was again convicted upon the plea of "not guilty" of murder in the second degree, and sentenced, in conformity to the verdict of the jury, to fifteen years imprisonment in the penitentiary.

A new trial being refused, he has appealed again to this Court. Several objections are taken for the prisoner by his counsel to the validity of the conviction.

The indictment is entitled of the September Term, 1873, by mistake of the draftsman, or in making out the transcript. But the record shows that the Grand Jury was duly empannelled at the January Term, 1874, and that on the 7th day of January, 1874, one of the days of said Term, they came into open Court, and presented this bill of indictment.

Upon its face the indictment charges that the offence was committed on the 24th day of October, 1873; several months, as shown by the record before the finding of the indictment. We are of opinion, therefore, that the record sufficiently shows that the action of the Grand Jury was had upon the indictment at the January Term, 1874, of said Criminal Court; and the statement of the wrong Term of the Court at the head of the indictment is no part of it, and does not vitiate it, the record showing when it was found. *Mitchell* v. *The State*, 8 Yer., 527–8. See also *M'Bean* v. *State*, 3 Heisk., 20.

Upon the trial, evidence was introduced for the purpose of showing that the defendant was insane at the time of the homicide, and the Court was asked to charge the jury, "that if, from the evidence, they believe the defendant to be insane, they shall so find, and upon such finding, the Court would direct an order to the Superintendent of the Hospital for the Insane to receive and keep the defendant as others; and when in the opinion of the trustees and physician, such patient has recovered from his insanity, they would cause him to be removed to the jail of Davidson County, to be again put upon his trial."

This the Court refused to charge, remarking that such proceedings could only be had upon a plea of insanity, tried separate, and apart from the plea of not guilty.

The Act of 1871, Ch. 138, §7, is "where the plea of insanity is urged," etc., they shall so find, and the Court will order the Superintendent to receive and keep him until he has recovered from his insanity, when he shall be delivered by the trustees and physician of the Asylum to the jailor of Davidson County for safe keeping, and they, the trustees and physicians, shall notify the clerk of the county of the fact.

The Act of 1871 is substantially like the provisions of the Code, §1554 to §1557, except that in §1554 the language is, "that when the plea of *present* insanity is urged," etc., whereas in the Act of 1871, the word *present* is omitted, and a dash substituted. It may not have been intended to be a literal re-enactment of the Code provisions, but upon any right rule of construction it must be held to apply to insanity existing at the time of the trial. The language is, if the jury trying the question of the prisoner's insanity, "*believe* the defendant to be insane, they shall so find." If they believe him to be insane at the time of trial, they shall so find. This is the correct construction and true meaning of the language employed. The Act further provides for the prisoner's confinement in the Asylum until his recovery, and that he shall then be confined in jail, and the Clerk of the County (or Court) in which he was arraigned shall be notified. For what purpose should the Clerk be notified, and

the defendant be put back in jail, if not for trial? But if the verdict of the jury at the trial upon a plea of "not guilty" had been that the defendant was insane at the time of the commission of the offence, it would have been an acquittal in effect of the offence, and he would have been entitled to his discharge, much less could he have been tried again for the same offence. "To authorize a conviction, it must appear that the accused was capable, at the time of the killing, of distinguishing between good and evil, and had a consciousness of doing wrong." 3 Heisk., 370. The Circuit Judge thus charged the jury, and he further instructed them, that they must be satisfied beyond a reasonable doubt that he was not insane at the time of the killing, otherwise they must acquit.

When, therefore, the Legislature say, in the present tense, that if the jury believe the defendant is insane, they will so find, we cannot understand them to mean that if the jury believe that the defendant was insane at the time of the killing, they shall so find. Nor can we believe that it was intended by the Act of 1871, that the prisoner, if the jury believed he was insane at the time of the killing, and should so find, should be kept in the Asylum, until his recovery, and then placed in jail that he might be tried again; nor that the prisoner should be tried upon the plea of "not guilty" at the same time the question was under their consideration whether he should then be tried at all. If insane, he ought not to be tried on the plea of "not guilty;" but the question

of his sanity, if pleaded or urged, should be first tried and determined. There was no issue made nor evidence offered to prove the insanity of the prisoner at the time of the trial. And there was no error in the refusal of the Court to instruct the jury as requested. They were told more than once, that if they believed the defendant was insane at the time of the killing, they should acquit. Their verdict negatives the defence of insanity.

In M. & Y., 123, it is held that if a prisoner who has been tried and found guilty of murder, alleges by his counsel, that sentence should not be pronounced because the prisoner was a lunatic at the time, and the Judge, upon his own inspection, is satisfied the plea is false, may pronounce judgment without empanneling a jury to ascertain the fact. But if. the Court have any doubts, or if it be a case of difficulty, a venire should be awarded, returnable instanter, to have the facts ascertained. The prisoner has been convicted by two juries, and in both cases the presiding Judge has refused to set aside the verdict. Without undertaking to set . out or discuss the testimony of the numerous witnesses upon the question of the insanity of the prisoner, we are content to say that in our opinion the verdict of the jury is sustained by the weight of the evidence. With the two verdicts against the prisoner, and · their approval by the presiding Judge, we must see that they have come to an erroneous conclusion upon the facts before we can reverse. 3 Heisk., 320, 451.

The fact of the killing by the prisoner in a most shocking manner, is abundant and most satisfactorily established. Let the judgment be affirmed.