CHICAGO—FIRST DISTRICT—MAY, 1911.    449

Sleeting v. The Supreme Tribe of Ben Hur, 161 Ill. App. 449.

## Louisa Sleeting, Appellee, v. The Supreme Tribe of Ben Hur, Appellant.

### Gen. No. 15,385.

1. INSURANCE—*when recovery will not be sustained where death results to insured while breaking the law.* Held, that under a provision of the policy which exempted the society from liability where death resulted to the insured while breaking the law, that an assault, vicious in character, with a large bottle, was a criminal assault with intent to commit murder, and the insured being killed by a police officer assaulted, that the insured therefore lost his life while breaking the law and no recovery in favor of the beneficiary could be sustained.

2. CRIMINAL LAW—*what is deadly weapon.* A large bottle is a deadly weapon within the meaning of the statute making an assault with a deadly weapon a criminal offense.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and judgment here. Opinion filed May 5, 1911.

**Statement by the Court.** Louisa Sleeting, widow of Joseph Sleeting, deceased, brought suit in the Circuit Court of Cook county against the Supreme Tribe of Ben Hur, a fraternal beneficiary association, appellant herein, upon a benefit certificate issued by it on the life of Joseph Sleeting, deceased.

Appellant's principal defense in the court below was made under one of its by-laws reading as follows:

"No benefits shall be paid on account of the death of a member, which death occurred  *  *  *  on account of or in consequence of, or as a result of the known violation by any such member of any law, either civil or criminal, of any state, territory, province or county in which such member may be, which violation of law is the proximate or remote cause of such death or disability, or if the death immediately

follow such violation of the law and would not have occurred except for the violation of such law."

It appeared from the evidence that on the 21st of June, 1905, there was a strike of the teamsters of the city of Chicago, and that several of the strikers had been, at about five o'clock of that day, arrested in the outer room of Hogan's saloon, at the corner of Indiana and St. Clair streets; that a few minutes later Police Officer Peter O'Neill entered the rear room of the saloon, in which there were at the time only Sleeting and the barkeeper. Immediately upon the entrance of O'Neill Sleeting shouted at him, using opprobrious epithets, and an altercation resulted in which Sleeting struck the officer over the head with a bottle, breaking it and seriously injuring the officer, after which Sleeting further struck the officer with the broken part of the bottle remaining in his hand, whereupon the officer shot and killed Sleeting. The defense, therefore, claimed that Sleeting's death was the result of an unlawful assault by him upon the officer, and that his death immediately followed such act, while the plaintiff contended that Sleeting's attack upon the officer was in self-defense; that the officer attempted to arrest Sleeting without a warrant, and without his having committed any crime in the presence of the officer, on account of which Sleeting was justified in resisting the officer. The jury found a verdict for $1,100, the amount of the benefit certificate, and the court entered judgment thereon, after overruling the motion for a new trial.

Appellant contends in this court that the judgment of the court below should be reversed, because (1), it is contrary to the law and the evidence, and (2), the court gave an erroneous instruction for the plaintiff, and also erroneously refused to give instructions 4, 8 and 9, offered by the defendant.

MANN & MILLER and GALE BLOCKI, for appellant; BENJAMIN CRANE, of counsel.

CHARLES WERNO, for appellee.

MR. JUSTICE BALDWIN delivered the opinion of the court.

It is practically conceded by appellee that the by-law quoted above was valid and binding upon Mrs. Sleeting, the beneficiary in the certificate, but she contends Sleeting's death did not occur under conditions which released the organization from its liability to her.

We think the court below erred in giving the jury on behalf of the plaintiff the instruction complained of, and also erred in refusing instructions 4, 8 and 9 offered by the defendant. For these errors we should reverse and remand the cause for a new trial, except for our findings upon the evidence.

Concerning the actual occurrences at and about the time of Sleeting's death the testimony is comparatively brief. Police Officer O'Neill testified that as he stepped into the rear room of the saloon there were present only Sleeting and the bartender; that Sleeting was twenty or thirty feet distant from him and immediately upon his entering the room Sleeting called out to him: "You damned son-of-a-bitch, get out of here or I will knock your brains out," at the same time reaching down behind and getting a long-necked bottle. He started for me with the bottle and I told him to drop the bottle. * * * He started for me with the bottle and I told him to cut it out. He did not pay any attention to either of us, but kept coming toward me with the bottle in his right hand. * * * He kept coming and when he came up a little further I told ·him to drop the bottle and the bartender hollered at him again to cut it out. He kept coming up until he got within ten feet of me or so and I pulled out my revolver and told him that he was under arrest and to drop the bottle. He paid no attention, but

came on and when he got within a step of me or within striking distance I reached over my left hand and threw my arm around his that had the bottle in. He grabbed me by the left—he had the bottle in the right hand—and he grabbed me by the left hand and shoved me and at the same time he shoved the bottle over my right arm and struck me there (indicating), breaking the bottle into small pieces, and cutting a gash in my head (indicating) about three inches long, so that it kind of staggered me a little, and when the bottle broke he held the neck of the bottle in his hand and struck at me then with the jagged edges of the neck of the bottle and I threw up my left hand and knocked it off and he just caught me on the back of the head here (indicating) in two or three places and cut a gash in the back of my coat about four inches long, then I put the revolver up to him and shot."

On cross-examination O'Neill stated: "After I pulled out the revolver I stopped; I did not walk toward him then; and when he got within about striking distance of me or a step away from me then I stepped over and got him around the arm. * * * After I pulled my revolver I said to him, 'You are under arrest, drop the bottle,' that was after he called me a son-of-a-bitch and told me he would knock my brains out."

"Q: But he had not done anything to you? A. He called me a son-of-a-bitch, and said he would knock my brains out."

"Q. Had he done anything else? A. He was coming towards me with a bottle raised in his right hand."

On re-direct examination O'Neill further stated: "Sleeting advanced toward me a little over half-way of the bar before we met. I don't know the length of the bar. He advanced toward me probably fifteen feet after I went in there."

Patrick Goeghan, the bartender, testified: "Saw Officer O'Neill come in the swinging doors there. Sleet-

ing was at opposite end of bar.   Officer O'Neill stepped
in the door.   At the time of the shooting there were
only three of us in the saloon.   The officer came in
and Sleeting hollered to him to get out of here you
son-of-a-b—.   Sleeting was at the end of the bar at
that time.   As soon as he said that he rushed in and
got this bottle, a bottle about sixteen inches long.   Then
he rushed out with the bottle and the officer and him
went for one another and I hollered at him to 'put down
the bottle,' and the officer hollered, 'put down the bot-
tle.'   Sleeting advanced to about the center of the bar
before he met Officer O'Neill.   I didn't see O'Neill draw
his gun.   I heard the shot fired.   When they met they
clinched and scuffled for a couple of minutes.   Sleet-
ing got loose his arm and struck the officer on the
head, breaking the bottle.   The next thing I knew
the shot was fired.''   On cross-examination he stated
that nothing had happened or been said between the
officer and Sleeting before the occurrence.

One Frank M. Specht testified: ''I pushed open
the swinging door and saw Sleeting hit Officer O'Neill
over the head with a bottle; at that time they were
about the center of the saloon.   He struck him just the
instant I stepped in.   Don't remember hearing any-
thing said.   Then I saw Officer O'Neill shoot.''

On cross-examination Specht stated: ''Up to the
time I pushed open the swinging doors did not know
there was anything wrong going on inside and as I
pushed open the doors I saw Sleeting hitting Officer
O'Neill with a bottle.   O'Neill did not shoot at the
same time.   Sleeting hit O'Neill with the bottle and the
bottle broke, then he went to hit him again with the
pointed end of the bottle he still had in his hand.   Then
the shot was fired.   *   *   *   At the time the officer shot
Sleeting, Sleeting had the bottle in his hand.   I said
the bottle was broken, but he had the neck of the
bottle.''

Officer Sweet testified: ''Then I went inside through
the swinging doors and I saw the officer with his hand

454    APPELLATE COURTS OF ILLINOIS.

Sleeting v. The Supreme Tribe of Ben Hur, 161 Ill. App. 449.

up this way (indicating), and the blood streaming down his face. That was Officer O'Neill."

Officer Tallowitz testified: "I was just getting off the step of the wagon, when I heard a shot fired and I walked toward the door of the saloon and they led Joseph Sleeting out of the saloon. We led him into the wagon and as soon as he was in the wagon I went into the saloon and saw Officer O'Neill in there with blood streaming down his head."

On behalf of plaintiff three witnesses testified to the general effect that they were friends of Sleeting and had been in the saloon with him shortly before the occurrence, though none of them saw the affair.

It appears in the testimony that shortly before the controversy between O'Neill and Sleeting, O'Neill and other officers had arrested some of the strikers in the front room of the saloon, and appellee contends that Sleeting knew of this and that he believed O'Neill had come to arrest him without a warrant, and that he was, therefore, justified in resisting.

From the evidence it clearly appears that Sleeting was the aggressor, and at the time and immediately before his being shot he was engaged in a murderous assault upon the officer, who was justified in shooting him. The large bottle used by Sleeting in making the assault upon O'Neill was a deadly weapon within the meaning of the law making an assault with a deadly weapon a criminal offense. Hamilton v. People, 113 Ill. 34; McNary v. People, 32 Ill. App. 58.

Sleeting's assault was so vicious in character that it was likely to be attended with serious danger, and to have caused the death of O'Neill, and would have sustained a criminal charge of assault with intent to commit murder. Crowell v. People, 190 Ill. 508.

The evidence does not at all sustain the contention of appellee that Sleeting was resisting an unlawful arrest by the officer when he was shot. The fact clearly shows that at and prior to the very moment when the

officer placed him under arrest, and some little time before the shot was fired, Sleeting himself was engaged in a criminal assault upon the officer, who acted with commendable courage in not using his revolver until his own life was actually seriously threatened.

On the whole record, the judgment of the court below must be reversed and a judgment entered here in favor of appellant upon a finding of facts.

*Reversed and judgment entered here.*