Ernest F. Brown

*v.*

State of Tennessee.

423 S.W.2d 493

(*Jackson*, April Term, 1967.)

Opinion filed January 12, 1968.

CORDELL H. SLOAN, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and THOMAS E. Fox, Deputy Attorney General, Nashville, for defendant in error; WILLIAM D. HAYNES and PHILLIP E. KUHN, Assistant District Attorneys General, Memphis, prosecuted the case in the trial court.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Brown was convicted of robbery accomplished by means of a deadly weapon and sentenced to serve not more than ten (10) years in the State penitentiary. He was also convicted of burglary and sentenced to serve not more than five (5) years in the State penitentiary. These sentences were to run consecutively.

On appeal the plaintiff in error raises three questions, to-wit: (1) the evidence preponderates against the verdict and in favor of the innocence of the accused; (2)

the trial judge erred in not granting a mistrial when the Clinical Director of the Central State Psychiatric Hospital in Nashville testified as to certain statements that Brown made to him in the course of a psychiatric examination to the effect that the man had had delirium tremors on a former occasion when he had been imprisoned, etc; and (3) one of the jurors who sat as a juror during the sanity hearing for Brown on the day before the trial in which he was convicted herein likewise sat as one of the jurors in the trial which convicted him and thus the man had not had a fair and impartial trial.

The case is ably argued and briefed, and, after reading and re-reading the briefs, authorities, and record, we are convinced that there is no prejudicial error herein.

The principal State's witness was the driver of a taxicab. He testified that on August 30, 1965, about 7:00 p.m., at the Greyhound Bus Station in Memphis, Tennessee, he picked up Brown and another man as fares in his cab. He said that Brown sat directly behind him in the taxicab. At the request of Brown and the man with him he drove them to the vicinity of Coleman Road in Shelby County, arriving there about 7:25 or 7:30 p. m. As he reached this road and turned off into the dark he was hit by Brown twice causing him to fall over on the seat and he became "about half conscious"; that at about the time that Brown hit him over the head Brown's companion was hitting him in the face with his fist, and when he fell over the seat $45.00 was taken from him. These parties then got out of the taxicab and fled. When the taxi driver regained his ability to drive, apparently in a very few minutes he drove to a nearby service station. When he got there his face, shirt and pants were covered with blood and he was still bleeding. A few

minutes later he went to a nearby hospital and twenty-six (26) stitches were required to sew up the lacerations about his head. There is no medical testimony in the record. One policeman did not see any abrasions about his face but he did see a cut on the back of his neck. The taxi driver didn't know what hit him but later on someone found a soft drink bottle in the backseat of the car and from such testimony the jury could certainly come to the conclusion that Brown had hit this taxi driver in the head with a soft drink bottle.

The taxi driver called the Sheriff's office through his dispatcher, that is, over the radio of his taxi and the Sheriff's force was sent to this vicinity. They searched this wooded area in a northeasterly direction from where the taxi driver was robbed and in doing so they saw some people looking around through this wooded area with a flashlight and found that these people were looking for a person who had just broken into a nearby house. One of these officers said thereupon that they would have to get the bloodhounds and search the area. When the Deputy Sheriff said this out loud, the plaintiff in error, Brown, came up to this officer and surrendered with his hands up and asked him to keep the dogs from being called. His companion in the taxicab, that is the companion of plaintiff in error, was never found.

After Brown was handcuffed, he turned over to the officers a gold cigarette lighter and informed the officers that he had gotten it from the house he had broken into. Brown pointed out the house to them, which was the home of a man named Young. Mr. Young testified as a witness and stated that about 6:30 he and his family left home and did not return until 8:00 o'clock on the night that the taxicab driver was robbed; that when they re-

turned with their oldest son they were about to leave him to pick up another son when they noticed a man standing on the front porch who ran into the woods back of the house. Mr. Young could not identify the plaintiff in error but he did identify the cigarette lighter that Brown had given to the officer as belonging to him.

██ ██ The first assignment of error is that the evidence preponderates against the verdict and in favor of the innocence of the plaintiff in error. We do not think so. We have heretofore briefly summarized what this evidence is and think clearly under the rules applicable that there is ample material evidence to prove the guilt of the plaintiff in error. The question of whether or not the evidence preponderates against the verdict has been before this Court literally hundreds of times. In one of our first cases, *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826, this Court laid down the rule applicable for such a situation, and we determined in that case, which has been followed hundreds of times since, that the jury who hears the witnesses tests their credibility, and, if the jury and trial judge believe this evidence, then that is binding on us. In this *Cooper* case the Court there said where an elaborate argument has to be made in order to show that the evidence preponderates against the verdict that fact of itself is sufficient to show that the evidence does not preponderate against the verdict.

██ The indictment in the first instance is based upon our statute, T.C.A. sec. 39-3901, which provides if the robbery be accomplished by the use of a deadly weapon the greater offense is committed and for such offense for obvious reasons, which need not be stated here, greater punishment may be imposed than for mere robbery. As far as we know, or has been pointed out, we have never

attempted to formulate any rule or test of what is meant by "deadly weapon" as used in this statute. We did in *Cooper v. State,* 201 Tenn. 149, 297 S.W.2d 75, 61 A.L.R. 2d 993, hold that a toy pistol was not a deadly weapon. In reading various authorities from other states we have come to the conclusion that the test is whether or not the weapon used would be likely to cause death; if one strikes another with a weapon with sufficient force and if the one struck might die as a result of the attack made on him, this is a deadly weapon. This seems to be the rule as laid down in other states. See *State v. Henderson,* 356 Mo. 1072, 204 S.W.2d 774; and *Sleeting v. Supreme Tribe of Ben Hur,* 161 Ill.App. 449. Such authorities are collected in a discussion of the question in 21 L.R.A., N.S.; at 497. See *Morgan v. State,* 220 Tenn. 247, 415 S.W.2d 879, for a definition.

In this present trial the State called as one of its witnesses Dr. Luton of the staff of the Central State Hospital and asked him if he made an examination of Brown and things of the kind and finally asked him what Brown, the plaintiff in error, told him when he, Dr. Luton, made this investigation, and Dr. Luton answered thus (which is the reason for the second assignment of error):

"He was at that time able to give a story of the incident that brought the charge, he gave a history of alcoholism, told of having delirium tremors on at least one occasion when he was in prison and was taken off of the drugs that he —he gave a history of taking other drugs than alcohol."

At this point trial counsel made a serious objection and moved for a mistrial. The trial judge, in denying the motion for a mistrial and ruling on this evidence,

immediately and properly, told the jury to delete this evidence from their minds and not to consider it for any purpose. In view of this fact it does not appear to us that prejudice is shown to have resulted because the admonition to the jury was thorough and the court was correct in refusing to grant a mistrial.

■ If every statement of this type that creep into lawsuits were prejudicial or had the effect of such prejudicial injury to the person being tried that it could not be corrected by a proper admonition from the trial judge, there would be few trials that could ever be conducted to an end. Jurors are intelligent persons, and, when properly instructed at the proper time when things like this come about, we do not think that such is prejudicial. The question of the sanity of plaintiff in error was raised by his plea of not guilty and evidence on this issue could have been heard at the trial on the question of Brown's being guilty or innocent of the two offenses. *Firby v. State,* 62 Tenn. 358; *Green v. State,* 88 Tenn. 614, 14 S.W. 430.

■ The last assignment raises an interesting question. On the day prior to the trial on the merits here as to whether or not this man was guilty of these offenses a lunacy proceeding was held for the purpose of determining his sanity. On this hearing the jury determined that he was sane and he could be tried in the ordinary manner. Following this lunacy hearing this present trial took place, and according to the record one of the jurors in the trial on the merits was likewise one of the jurors on the lunacy hearing. A very interesting and effective argument is made that the case should be reversed because this juror sat in both cases.

. ·The argument is made, based upon authorities, to the effect that the plaintiff in error is entitled to an impartial trial both under Amendment 6 of the United States Constitution and sec. 9 of Article 1 of the Constitution of Tennessee, and authorities cited which can be found by seeing the footnotes under sec. 9, Article 1 of our Constitution to the effect that a juror who enters upon the trial of a case must have nothing to bother his mind regarding a presumption that the man is innocent and that such presumption is entitled to him until overturned by plenary proof; and that one partial man on a jury destroys the impartiality of the body; that every juror must be disinterested and impartial in feeling. Such cases as *Eason v. State,* 65 Tenn. 466; and *Ellis v. State,* 92 Tenn. 85, 20 S.W. 500; and others are cited. It is argued that since this juror did sit on the sanity hearing that he could not be impartial in trying the man on the merits of this case.

The State in their brief and argument freely admit that every man who comes to trial is entitled to an impartial trial but the State argues that by having a man sit on the sanity hearing and then sit on the regular hearing does not make him an impartial man. The State cites *Apperson v. Logwood, Adm'r,* 59 Tenn. 262, wherein this Court more than a hundred years ago held that it was error to allow ten jurors to sit in a case who had previously sat in a similar case. This, as we see it is an entirely different proposition when the only argument is that the man having sat on the sanity hearing is not competent to sit on the trial on the merits. Such a situation, as we see it, is in no wise closely related to the reasoning of *Apperson v. Logwood,* supra. The problem in this regard is very similar to such a problem as we

considered in *Smith v. State,* 205 Tenn. 502, 327 S.W.2d 308 (the Supreme Court of the United States denied a writ in this case), that is, when a juror has information prior to the trial or obtains information through the newspapers or some other source other than on the witness stand after the trial begins, the case should not be reversed for this reason when the court admonished the jury that they should not decide the case on the evidence they had thus received but should decide it on the evidence heard by them from the witness stand and on the instructions given by the trial judge.

This is the basis for determining whether or not jurors are qualified at the beginning of the trial, that is, whether or not they could listen to the evidence, instruction of the trial court, and render a fair verdict. If the jurors say that they can then they are competent jurors. The cases even go to the extent of holding that where a juror says that he has formed an opinion prior to the trial of the case but that he can decide the lawsuit on the evidence heard from the witness stand and the charge of the court then he makes an acceptable juror.

The Supreme Court of Michigan in the case of *People of State of Michigan v. Mol,* 137 Mich. 692, 100 N.W. 913, 68 L.R.A. 871, 874, after considering a number of authorities said this:

"Previous jury service upon an issue merely similar to the one on trial does not disqualify; and even service in the same case upon a different issue will not disqualify."

For this rule the Michigan court cites 17 Am. and Eng. Enc.Law 2d, pp. 1154 and 1155.

After fully considering the matter which has been ably argued and briefed we are satisfied that there is no reversible error in this record, and the judgment below must be affirmed.