STATE of Tennessee, Appellee,

v.

Dewayne HAYNES, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

June 6, 1986.

Permission to Appeal Denied by Supreme Court Sept. 29, 1986.

Jim Weatherly, Public Defender, Sumter L. Camp, Asst. Public Defender (At trial and on appeal), William P. Purcell, Asst. Public Defender (At trial only), Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., Charles E. Bush, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., John Zimmermann, Cheryl Blackburn, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

SCOTT, Judge.

As a result of one criminal episode, the appellant was convicted of a number of separate offenses. First, the appellant was convicted of assault with intent to commit murder in the second degree, for which he received a sentence of three years in the state penitentiary. He was also convicted of aggravated kidnapping, for which he received a sentence of forty years in the state penitentiary. He was also convicted of aggravated rape, for which he received another sentence of forty years in the state penitentiary. He was convicted of armed robbery, for which he received a sentence of thirty-five years in the state penitentiary. Finally, he was convicted of burglary in the first degree, for which he received a sentence of ten years in the state penitentiary. He was sentenced as a Range I, standard offender. The sentences for the assault and the aggravated kidnapping were ordered to be served concurrently. All of the other sentences are to run consecutively to each other and consecutively to the concurrent sentences. This aggregates to a prison term of 125 years.

Much aggrieved by the convictions and lengthy sentence, the appellant has presented seven issues on appeal, some of which have subissues. One issue challenges the sufficiency of the convicting evidence, but only as to the charges of armed robbery and aggravated rape. The evi-

dence of the other offenses is unchallenged.

On the morning of January 13, 1984, the appellant, accompanied by Richard Emmitt and Stuart Brown, entered the main office of Third National Bank in downtown Nashville. Mr. Brown presented a check in the amount of $1,500.00 to Lisa Bartlett, one of the tellers then on duty. The check was payable to "cash" and was drawn on the account of the victim. While Mr. Brown was presenting the check, the appellant and Mr. Emmitt wandered about the bank.

Since the check was in an amount in excess of that which the teller was authorized to cash without the prior approval of a bank officer, she directed Mr. Brown to Bobbie Kincaid, an officer who had authority to approve the check. Ms. Kincaid attempted to contact the victim but was unable to reach her. She then asked Sam Neal, a bank security officer with investigatory responsibilities, to look into the matter. Mr. Neal escorted Mr. Brown to a conference room where he questioned him about the check. Mr. Brown stated that he had gotten the check from Mr. Emmitt. Mr. Neal then located Mr. Emmitt in the bank and brought him to the conference room. Mr. Emmitt told Mr. Neal that the check was payment for work done for the victim and that he had gotten the check from the appellant. Mr. Neal then began searching the bank for the appellant and soon located him. When the appellant was questioned about the check, he told Mr. Neal that he had found the check on Broad Street in Nashville.

Convinced by these conflicting stories that something was truly amiss, Mr. Neal contacted the police, had the appellant and his companions arrested and accompanied them to police headquarters, where he swore out a warrant, charging all of them with concealing stolen property.

Aubrey Turner, a Metropolitan Police officer, was dispatched to the home of the victim on a "check on the welfare" call. When he arrived he found that her apartment was open. Upon entering, he immediately observed that it had been ransacked.

He noted that a glass pane was missing from the kitchen door.

Mr. Turner summoned two detectives, Billy A. Butler and Tim Allen, and the men continued to look through the apartment in an effort to ascertain what had happened to the 82 year old resident. Their efforts were successful and she was found under a very deep pile of clothes in a hall closet. She had been beaten so severely that her face was hardly recognizable. Her mouth was stuffed with panty hose and other materials and she was hogtied with telephone wire in such a manner that even the slightest movement would have caused her strangulation. She was in a fetal position with her torso naked and her undergarments below her knees. Her condition appeared so bad that the officers first thought that she was dead. However, life was detected in her body and she was rushed to Metropolitan General Hospital.

At the hospital she was examined by Dr. Sherry Anderson, a resident in obstetrics and gynecology at Vanderbilt University. Dr. Anderson testified that in her medical practice she had never seen anyone so badly beaten. Her face was swollen and was purple, her right eye was swollen completely shut, red marks caused by the telephone cord were found on her neck, ankles and wrists, and open blisters were present on her wrists. Her entire genital area was swollen, particularly the introitus, the entrance to the vagina, and the labia. Blood was found around her anus, but the doctor could find no source for the blood. When the victim was removed from the hall closet, blood and feces were found where she had been lying. No semen was found during the pelvic examination and there were no deep lacerations to the vagina. However, Dr. Anderson testified that the swollen condition of her vagina was caused by more than a finger.

Miraculously, the victim was able to go to the home of a nephew the very day of her treatment, and it was not even necessary for her to stay overnight in the hospital. However, her general physical and mental health had deteriorated markedly

since the incident and her prior independent lifestyle was forever ended.

After Mr. Butler completed his investigation at the victim's home and the hospital, he returned to police headquarters where he questioned the appellant. The appellant confessed to the detective that the night before he had agreed to help Mr. Emmitt burglarize the apartment. With Mr. Emmitt acting as the lookout, he gained access to the apartment through a kitchen window. He let Mr. Emmitt into the apartment where they found the victim asleep in her bed. They immediately gagged and hogtied her and then beat her until she was, in the appellant's words "totally bleeding." He only admitted hitting her twice, but stated variously that his companion hit her from three or four to maybe a dozen times. According to him, Mr. Emmitt played with her breast and her vagina but "he did not make no physical thing with it." He did not admit any sexual contact with her. The appellant and Mr. Emmitt ransacked the apartment in search of money, but were unable to find any. Therefore, the appellant forced her to write out the check payable to cash in the amount of $1,500.00. They then hid her under the clothes in the closet. The next morning they recruited Mr. Brown to cash the check, since he had a birth certificate, which they surmised would be sufficient identification to allow him to cash the check.

Based upon this evidence the jury found the appellant guilty of all of the offenses.

The appellant first contends that there was no evidence to show that a deadly weapon was used in the robbery. In response, the state contends that the deadly weapon was the wire used to hogtie the victim.

■ Weapons generally fall into two categories. Some are deadly per se, such as firearms. Others are deadly by reason of the manner in which they are used. "(A) dangerous or deadly weapon is any weapon or instrument which, from the manner in which it is used or attempted to be used, is likely to produce death or great

bodily injury." *Morgan v. State*, 220 Tenn. 247, 415 S.W.2d 879, 882 (1967). The "test" is whether or not the weapon used would be likely to cause death. *Brown v. State*, 220 Tenn. 709, 423 S.W.2d 493, 495 (1968). Whether or not a weapon is deadly depends on the attendant circumstances and the possible use thereof. 77 C.J.S. (Robbery) § 25, p. 465.

■ It is clear from the proof that the victim was bound with the telephone cord in a manner that her slightest movement would have resulted in her strangulation. The wire was used in such a way that death was likely. So used it was a deadly weapon, as contemplated by our armed robbery statute. TCA § 39–2–501.

■ As to the aggravated rape, the appellant admitted that he helped bind the victim, that he hit her and that he was present when Mr. Emmitt struck her. He heard her cries for help but refused to aid her and was present when Mr. Emmitt fondled her breast and vagina.

All persons present, aiding and abetting, or ready or consenting to aid and abet in the commission of any criminal offense shall be deemed principal offenders and punished as such. TCA § 39–1–303. There is no evidence that the appellant penetrated the victim, since she did not testify. However, there was overwhelming evidence that he was aiding and abetting Mr. Emmitt's abuse of the helpless, aged victim, and the doctor's testimony established that she was raped.

■ A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

There was ample, indeed overwhelming, evidence from which any rational trier of

fact would conclude that the appellant was guilty of armed robbery, aggravated rape and all of the other offenses which he committed against the victim and her property. Rule 13(e), T.R.A.P., *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). This issue has no merit.

■ In another issue the appellant contends that the trial judge erred by overruling his motion to dismiss two counts of the indictment. First, he claims that County Three is void for uncertainty. He argues that it is unclear which aggravating circumstance the state intended to prove. Thus, he contends that he was denied proper notice of the charge. Count Three of the indictment provides as follows:

And the Grand Jurors aforesaid, upon their oath aforesaid, do further present that the said RICHARD A. EMMITT AND DEWAYNE HAYNES of said County heretofore, to wit, on the day and year aforesaid, in the County aforesaid, unlawfully and feloniously did unlawfully sexually penetrate the body of (the victim), with force or coercion to accomplish the act and thereby during said rape did cause the said (victim) to suffer serious personal bodily injury, the said RICHARD A. EMMITT AND DEWAYNE HAYNES being aided and abetted by one or more persons in the commission of the rape, thereby committing the offense of aggravated rape, and against the peace and dignity of the State of Tennessee.

TCA § 39–2–603 defines aggravated rape as the unlawful sexual penetration of another accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;

(2) The defendant causes personal injury to the victim;

(3) The defendant is aided or abetted by one or more other persons; and

(A) Force or coercion is used to accomplish the act; or

(B) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless;

(4) The victim is less than thirteen (13) years of age.

It is clear that the indictment alleged that the appellant was aided and abetted by another and that "force or coercion (was) used to accomplish the act." TCA § 39–2–603(a)(3)(A). The indictment also alleged that the rape "cause(d) personal injury to the victim." TCA § 39–2–603(a)(2). The judge correctly refused to dismiss this count.

The appellant has also challenged the sufficiency of Count Five which charged the appellant with burglary in the first degree. He contends that it failed to allege where he intended to commit the felony and that it is also defective because it failed to define the felony of larceny.

■ Count Five of the indictment charged the appellant as follows:

And the Grand Jurors aforesaid, upon their oath aforesaid, do further present that the said RICHARD A. EMMITT AND DEWAYNE HAYNES of said County heretofore, to wit, on the day and year aforesaid, in the County aforesaid, unlawfully and feloniously, forcibly and violently did break and enter in the night time the dwelling house of (the victim), with the unlawful intent to commit a felony, to wit: Larceny, and did then and therein commit the felonies set forth herein as Counts One through Four and against the peace and dignity of the State of Tennessee.

■ The three basic requirements of an indictment are: (1) notice to the defendant of the offense which he is called upon to answer; (2) notice to the court so that a proper judgment can be entered; and (3) protection of the defendant against double jeopardy. *State v. Pearce*, 7 Tenn. (Peck) 66, 67 (1823). The fundamental test of the sufficiency of an indictment is the adequa-

cy of the notice conveyed to the defendant by its terms. *State v. Estes,* 199 Tenn. 406, 412, 287 S.W.2d 40, 42 (1956). It is clear that the appellant received adequate notice of the charge alleged in Count Five.

An indictment for burglary must set forth and define the felony intended to be committed. *Hooks v. State,* 154 Tenn. 43, 289 S.W. 529 (1926). That is precisely what Count Five did. Of course, it is not necessary to set forth exactly what the burglar intended to steal.

Both of the challenged counts state the facts constituting the offenses in a manner that "a person of common understanding" would know what was intended. TCA § 40-13-202. Both have such a degree of certainty that the court was able upon conviction to pronounce the proper judgment. Furthermore, the appellant is fully protected against double jeopardy. The trial judge did not err in refusing to dismiss these counts of the indictment, and this issue has no merit.

In another issue the appellant contends that the trial judge erred by overruling his motion to suppress his statement. In support of this issue he has set forth four contentions. First, he alleges that the statement should have been suppressed because the state failed to promptly take him before a magistrate in violation of Rule 5(a), T.R.Cr.P. Next, he contends that the statement should have been suppressed since he was arrested without probable cause and that the statement was therefore the fruit of that illegal arrest. He also contends that the motion to suppress should have been granted because the statement was taken in violation of his *Miranda* rights and his right to counsel under the Sixth Amendment of the U.S. Constitution and Article 1, Section 9 of the Tennessee Constitution. Finally, he contends that the trial judge erred by refusing to consider psychological evaluations which were offered during the hearing on the motion to suppress.

The appellant contends that although he was arrested at Third National Bank shortly after 9:00 A.M., that he was not taken before a magistrate until 6:25 P.M., and that the statement was given at approximately 1:00 P.M.

The record does not support the appellant's allegations. Mr. Neal, the bank's investigator, testified that he accompanied the appellant and the police to the appearance before the magistrate shortly after 10:00 A.M. When asked whether he appeared before a magistrate that morning, the appellant said, "I might of have, I can't remember—quite remember."

In short, it is clear that there was compliance with Rule 5(a), T.R.Cr.P., which requires that an arrestee be taken before the magistrate "without unnecessary delay." Without more, this Court must presume that the judge before whom they appeared that morning performed his duty.

Furthermore, the record clearly revealed that the appellant was advised of his *Miranda* rights prior to questioning and that he executed a knowing, voluntary wavier of those rights.

As to the legality of the arrest, the appellant was arrested upon a warrant taken by Mr. Neal, the bank investigator.

TCA § 40-6-205 provides that if the magistrate is satisfied from the examination of the informant "that the offense complained of has been committed, and there is reasonable ground to believe the defendant is guilty thereof," he shall issue the arrest warrant. A "reasonable ground" is one that would justify a reasonable man to believe that a particular person was guilty of a felony. *State v. Jefferson,* 529 S.W.2d 674, 689 (Tenn.1975). In dealing with probable cause, one deals with probabilities, the factual and practical considerations of everyday life upon which reasonable and prudent persons, not legal technicians, act. *Id.*

In this case Mr. Neal was confronted with three men, none of whom had any identification other than Mr. Brown, who had his birth certificate, which is hardly sufficient identification given the enormous changes which occur between birth and

adulthood. The men had attempted to cash a check in the amount of $1,500.00 payable to "cash," drawn on the account of an elderly woman. Her account had been "flagged" because checks had been stolen from her two weeks earlier in an unrelated incident. Conflicting stories were given by the men as to how they came into possession of the check. When the bank officer was unable to contact the drawer of the check to verify its validity, *any* reasonable person would have believed that the men had feloniously come into possession of the check. To have drawn the opposite conclusion would have been irresponsible, as well as unreasonable.

 The appellant also claims that he requested a lawyer prior to questioning, but that his request was ignored. However, the appellant could not name the detective to whom the request was made nor even describe him.

On the other hand, Mr. Butler testified that he was the only officer who interrogated the appellant and that he signed the waiver of rights form and never asked for an attorney. The trial judge chose to believe Mr. Butler's testimony and disbelieve the appellant's allegation. The trial judge's findings have the weight of a jury verdict and must be sustained if there is material evidence to support them. *State v. Adams*, 631 S.W.2d 392, 394 (Tenn.1982). There was ample material evidence to support the trial judge's finding that the appellant never requested counsel as he alleged and that he was properly warned of his rights prior to questioning.

 The appellant also contends that the statement was not knowing and voluntary because he could not make an intelligent waiver of his rights due to the fact that he had an intelligent quotient of 77. He sought to introduce psychological evaluations that were four to six years old in order to support his position. The trial judge expressed his willingness to consider any current information, but refused to admit the evaluations, some of which were conducted before the appellant was in high school.

One of the functions of the trial judge is to determine questions of the admissibility of evidence. The judge has broad discretion in this area and his rulings will not be upset on appeal unless there is a showing that he abused that discretion, to the prejudice of the defendant. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460, 464 (1963).

No abuse of discretion has been shown. The record revealed that the detective read the appellant his rights prior to questioning and the appellant then also read the waiver of rights form. He stated that he understood his rights and that he was willing to waive them. He signed the form and his signature was witnessed by the detective and a police stenographer and then he proceeded to give his statement. The appellant also admitted that Mr. Butler had not threatened or abused him in any manner. As the trial judge correctly noted, IQ scores do not tell the entire story. Prior contacts with the criminal justice system provide many defendants with knowledge of their rights far in excess of what may be expected based upon an IQ level determined during childhood. The trial judge properly admitted the appellant's statement. This issue has no merit.

In another issue the appellant contends that the trial judge improperly charged the jury by failing to correctly instruct on the offense of aggravated kidnapping and by giving incorrect and contradictory instructions on the offenses of aggravated rape and aggravated sexual battery.

As to the aggravated kidnapping, he contends that the trial judge erred by failing to instruct the jury that not only must they find that the victim suffered serious bodily injury, but that the injury must have been a proximate result of the secret confinement or unlawful detention. He further contends that the trial judge failed to define "serious bodily injury" as set forth in TCA § 39-2-101(a)(2).

 If a jury instruction is erroneous or the trial judge fails to give a requested instruction, a defendant has two options. He can call it to the trial judge's

attention immediately or he can sit on his objection and allege it as a ground in support of his motion for a new trial. Rule 30(b), T.R.Cr.P. However, alleged omissions in the charge must be called to the trial judge's attention at trial or be regarded as waived. *Rule v. Empire Gas Corp.*, 563 S.W.2d 551, 554 (Tenn.1978).

■■■ In defining aggravated kidnapping, the trial judge omitted the phrase "the serious bodily injury must be a proximate result of the secret confinement, unlawful detention, or being sent out of state" found in TCA § 39–2–301(a)(3)(B). The instruction given was not erroneous, it was just incomplete. Mere meagerness of the charge is not reversible error, in the absence of a special request for an additional charge. *State v. Rollins*, 605 S.W.2d 828, 832 (Tenn.Cr.App.1980). The appellant neither raised a contemporaneous objection nor submitted a special request. He cannot now complain about the instruction given.

■■■ Likewise, his allegation is that the instruction regarding the aggravated rape and aggravated sexual battery simply did not go far enough. The trial judge defined aggravated rape as follows:

"Aggravated rape is unlawful sexual penetration of another accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act;

(2) The defendant causes personal injury to the victim;

(3) The defendant is aided or abetted by one or more other persons."

The trial judge then defined the terms coercion, defendant, force, intimate parts, sexual contact, sexual penetration and victim. The defendant complains that the trial judge omitted the portion of TCA § 39–2–603(a)(1) relating to being armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe that it was a weapon. It is true that the trial judge omitted this portion of the definition. However, it is clear from the indictment that he was not charged with violation of TCA § 39–2–603(a)(1). Rather, the appellant was charged with violation of TCA § 39–2–603(a)(2) and (a)(3)(A).

■■■ The appellant also argues that the trial judge erred by failing to repeat the word "unlawful" when referring to sexual penetration in other parts of the charge. He also contends that the charge regarding the lesser included offense of aggravated sexual battery was confusing, since the judge used terminology from the aggravated rape statute. However, taken as a whole, it is clear that the charge adequately defined the crimes of aggravated rape and aggravated sexual battery. This issue has no merit.

■■■ In the next issue the appellant contends that the trial judge erred by denying his requested jury instruction on aiding and abetting. The trial judge agreed to give the instruction on aiding and abetting from T.P.I.—Crim. § 3.02, and did give that instruction. However, the appellant contends that the instruction which his counsel authored was a clearer statement of the law.

If the instruction given by the trial court is a correct statement of Tennessee law and fully and fairly sets forth the applicable law, it is not error to refuse to give a specifically requested charge. *Edwards v. State*, 540 S.W.2d 641, 649 (Tenn.1976). This issue has no merit.

In the final two issues the appellant contends that the trial judge erred by sentencing him to the maximum punishment allowable for each offense, and further erred by ordering all but one of the sentences to be served consecutively.

Since sentencing issues have been raised in this appeal, we have conducted the *de novo* review on the record mandated by § 31 of the Tennessee Comprehensive Correction Improvement Act of 1985, Chap. 5, Public Acts of 1985, First Extraordinary Session, to be codified at TCA § 40–35–402(d). In so doing, we have indulged in no presumption that the sentencing decisions of the trial judge were proper.

In deciding whether the sentences should fall in the upper or lower end of the range, a trial judge must consider the mitigating and enhancing factors enumerated in the sentencing statutes. *State v. Pride*, 667 S.W.2d 102, 106 (Tenn.Cr.App.1983). The trial judge may not rely upon enhancement factors which are necessary elements of the offense charged in the indictment. TCA § 40-35-111.

The only mitigating factors in the appellant's favor are his youth, (nineteen years of age), TCA § 40-35-110(7), and his low IQ, (77), TCA § 40-35-110(13) (the catchall provision).

The enhancement factors are the appellant's history of criminal behavior, TCA § 40-35-111(1), first as a juvenile and then as an adult, the vulnerability of the victim due to her age, TCA § 40-35-111(4), the exceptional cruelty displayed during the commission of these offenses, TCA § 40-35-111(5), and the appellant's willingness to commit crimes which caused great risk to human life. TCA § 40-35-111(10). It is clear that the enhancement factors far outweighed the mitigating factors and the maximum punishments were appropriate.

Consecutive sentencing is reserved for the persistent offender, the professional criminal, multiple offenders, dangerously mentally abnormal persons and dangerous offenders as those terms are defined in *Gray v. State*, 538 S.W.2d 391, 393 (Tenn. 1976). The trial judge found that the appellant is a "dangerous offender." That term is defined in *Gray* as follows:

A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. This does not mean that all defendants convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed.

This record contains overwhelming proof that the appellant has little or no regard for human life and absolutely no hesitancy about committing a crime in which the risk to human life is high. He is, without question, a "dangerous offender" and consecutive sentences were properly imposed. The sentencing issues have no merit.

Finding no merit to any of the issues presented by the appellant, the judgment is affirmed.

O'BRIEN, J., and RICHARD R. FORD, Special Judge, concur.