IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2002 Session

## STATE OF TENNESSEE v. TIMOTHY M. HODGE

**Direct Appeal from the Circuit Court for Hickman County**
**No. 00-5108CR-II    Timothy L. Easter, Judge**

_____

**No. M2001-03168-CCA-R3-CD - Filed July 26, 2002**

_____

The defendant appeals his conviction for driving under the influence. He raises two issues: (1) whether the evidence was sufficient to support his conviction; and (2) whether the trial court erred in its instruction to the jury regarding the definition of "physical control" of a vehicle. After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Ken Quillen, Nashville, Tennessee, for the appellant, Timothy M. Hodge.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Kenneth K. Crites, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant was driving his truck on February 13, 2000, on Missionary Ridge Road in Hickman County, Tennessee, when he lost control of the vehicle, ran off the road, and got stuck in a field at the bottom of a ravine. Deputy Carl Hutchinson testified that while on patrol, he saw the defendant's truck "off in a big hole." Deputy Hutchinson stated it appeared the defendant was trying to drive the truck out of the ravine. Hutchinson said the defendant smelled strongly of alcohol and appeared to be intoxicated.

Trooper Kent Montgomery testified he was dispatched to the accident at approximately 2:00 a.m. Montgomery stated he observed the defendant's truck off the side of the road down a steep embankment in a field at least 80 or 90 feet from the road. He testified the truck had to be pulled from the ditch.

When Trooper Montgomery arrived, the defendant was seated in the back of Deputy Hutchinson's car. Montgomery testified the defendant appeared to be intoxicated and failed two field sobriety tests, the finger-to-nose test and the one leg stand. According to the trooper, the defendant said he drank four beers at the Key West Restaurant. Montgomery opined it appeared the defendant drank more than four beers. The trooper did not recall seeing alcohol in the defendant's truck.

Montgomery said there was no indication the defendant was injured, and he did not recall the defendant saying he was injured. Montgomery testified the defendant passed out while Montgomery was preparing paperwork. Montgomery stated the defendant's blood was drawn at 5:30 a.m. for a blood alcohol test. TBI forensic scientist Louie Kuykendall testified the test indicated the defendant's blood alcohol level was .15 %.

Lisa Hodge, the defendant's wife, testified she and the defendant met at Key West Restaurant at about 8 p.m. She said the defendant drank two beers and was not intoxicated when they left the restaurant at 9:30 p.m. in separate vehicles. She described the weather that evening as cold and said it was raining and sleeting. She testified she told the defendant she planned to visit her sister who lived on Missionary Ridge Road.

The defendant testified he met his wife at the restaurant at about 8 p.m.; he had two beers; they left in separate vehicles about 9:30 p.m.; and it was cold and had started to sleet. He testified he had nothing to drink before he went to the restaurant. The defendant stated he bought gas and a six pack of beer after leaving the restaurant and then drove down Missionary Ridge Road looking for his wife. He said he did not drink any of the beer in the six pack while he was driving. He testified that about 10 p.m., he rounded a curve and saw two dogs in the road. He said he steered to avoid the dogs, lost control of the truck, went into a spin, struck a mailbox or post, and slid backward into the ravine. He described the ravine as being 12 to 15 feet deep. The defendant testified the truck was stuck and could not be driven. He denied he was impaired at the time of the accident.

The defendant stated the accident knocked his shoulder out of socket; he was in much pain; and he was unable to lift his arm. The defendant stated he remained in the truck, sat in the cab, and left the truck running with the heater on. He testified that after approximately 30 minutes passed and no other cars drove by, he decided to drink the beer he had purchased. He stated he waited in the truck between an hour and a half to two hours before the deputy discovered the truck in the ditch. He said he drank the entire six pack while he waited and admitted he became intoxicated. He testified he did not try to move the truck.

The defendant testified he told the officers how the accident occurred. He also said he told Deputy Hutchinson he had injured his shoulder and complained to him that he could not move his arm; he said he thought Hutchinson told the trooper about his shoulder. He said the injury hampered his performance of the field sobriety tests. The defendant denied passing out in the officer's car, explaining he fell asleep because he was tired.

Defendant also identified a self-made videotape, which was played for the jury, depicting the curve in the road where the accident occurred. In rebuttal, Trooper Montgomery testified the accident occurred at a different location than that depicted in the videotape.

The jury convicted the defendant of driving under the influence.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant argues the evidence was not sufficient to support his conviction. We do not agree.

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id.*; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

It is unlawful to drive or be in physical control of an automobile or other motor driven vehicle on any of the public roads, streets, alleys and highways or any other premises generally frequented by the public at large while under the influence of an intoxicant. Tenn. Code Ann. § 55-10-401(a)(1).

The defendant contends he was not under the influence until after his vehicle became stuck in the field at the bottom of the steep embankment. The defendant argues he could not be found guilty of driving under the influence because (1) he was not in physical control of the vehicle at that time, and (2) the vehicle was located in a field. It may well be the defendant could not be found guilty of driving under the influence solely for his actions occurring after the vehicle was stuck in the field since the vehicle was not located on a road, highway, street, alley, or premises generally frequented by the public at large. *See id.* However, we view the evidence differently than the defendant.

During jury deliberations, the jury asked the trial court, "What do you consider legally driving? Man behind wheel with motor running?" The trial court then gave the jury the pattern instruction defining "physical control." *See* T.P.I. - CRIM 38.06 (5th ed. 2000). The defendant argues we must infer from the jury's question that it found the defendant did not become intoxicated until after the truck left the road and became stuck in the field; therefore, he argues, the evidence was insufficient to support the jury's verdict. We will not speculate as to the reason for the jury's question. We are without authority to make such an inference or assume the jury reached its verdict as defendant suggests.

Viewing the evidence in a light most favorable to the state, as we must, the evidence is more than sufficient to establish the defendant was under the influence at the time he ran off the road. The defendant testified he consumed beer at the restaurant, although he said he had only two. Trooper Montgomery, however, testified the defendant told him he drank four beers at the restaurant. Deputy Hutchinson said the defendant was trying to drive the truck out of the ravine when Hutchinson first arrived on the scene. Further, the officers testified the defendant appeared to be intoxicated, and the test showed the defendant's blood alcohol level was .15%. Although the defendant's wife testified the defendant was not intoxicated when he left the restaurant and the defendant testified the accident occurred at 10 p.m., the jury was not required to accredit their testimony.[1] Therefore, we conclude the evidence was sufficient to establish the defendant was under the influence of an intoxicant at the time he ran off the road.

## II. JURY INSTRUCTION ON PHYSICAL CONTROL

The defendant further argues the trial court's instruction on the definition of "physical control" was not a clear and distinct exposition of the law. This issue is without merit.

The trial court charged the jury pursuant to the standard charge applicable to the determination of a driving under the influence case, which did not include a special definition of the term "physical control." *See* T.P.I.- CRIM 38.01(5th ed. 2000). As previously stated, during the jury's deliberations it posed the following question to the trial court: "What do you consider legally driving? Man behind wheel with motor running?" The trial court responded to the jury's question with a written instruction which included the explanation of "physical control" set forth in Tennessee Pattern Jury Instruction 38.06. That charge stated:

> For a person to be in physical control of a motor vehicle, the person must be present, at or near a motor vehicle and must have the ability to determine whether or not such motor vehicle is moved, and, if so, to where it is moved. It is not necessary that the motor of a

---

[1]According to defendant's testimony, he ran off the road at about 10:00 p.m. and waited about two hours before the deputy arrived. This would, therefore, be about midnight. The deputy did not testify as to the time he arrived at the scene; however, Trooper Montgomery testified he received the dispatch at about 2:00 a.m.

motor vehicle be running or capable of starting for a person to be in physical control of such a vehicle. A person may be in physical control of a motor vehicle without driving, starting or moving the motor vehicle.

T.P.I.- CRIM 38.06 (5th ed. 2000).

After the jury announced it had reached a verdict but prior to the jury being brought into the courtroom, the defendant orally requested an additional jury instruction stating the jury must find beyond a reasonable doubt the vehicle "was movable at the time he was under the influence." The trial court replied that the defendant's request came too late because the jury had reached its verdict.

Our state supreme court has held a finder of fact should consider the "totality of the circumstances" in determining whether the defendant was in physical control of an automobile. State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993). The trier of fact is allowed to consider a number of factors, including the location of the defendant in relation to the vehicle; the location of the ignition key; whether the motor was running; the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, and the extent to which the vehicle is capable of operation or movement under its own power or otherwise. *Id.*

Although Tennessee Pattern Jury Instruction 38.06 does not advise the jury to consider the totality of the circumstances pursuant to Lawrence, it is not an erroneous statement of the law. *See* State v. Johnny Wade Meeks, No. 03C01-9811-CR-00411, 1999 Tenn. Crim. App. LEXIS 1218, at *15 (Tenn. Crim. App. Dec. 3, 1999, at Knoxville), *perm. to app. denied* (Tenn. 2000). Instead, the failure to instruct the jury regarding its duty to consider the totality of the circumstances can best be described as the omission of an instruction. *Id.*

Alleged omissions in a jury charge must be called to the trial court's attention at trial; otherwise, an objection to the omission is waived. State v. Haynes, 720 S.W.2d 76, 84-85 (Tenn. Crim. App. 1986). While the defendant did generally object to the jury instruction, his objection was based on his insistence that the definition of physical control should state "it must be a moveable automobile." As the Tennessee Supreme Court stated in Lawrence, whether the vehicle is "capable of being operated or moved under its own power or otherwise" is just one of a number of factors to be considered in determining whether the accused was in physical control of the vehicle. 849 S.W.2d at 765. Further, the defendant did not object in the trial court to the omission of the "totality of the circumstances" language as prescribed in Lawrence; he simply requested an instruction stating the vehicle must be "moveable at the time he was under the influence." He urges for the first time on appeal that the trial court should have given a supplementary instruction that tracks the Lawrence language. An appellant cannot change theories from the trial court to the appellate court. State v. Dooley, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000).

We further note the defendant did not place his requested jury instruction in writing. A trial court will not be placed in error where a requested instruction is not in writing. State v. Mackey, 638

S.W.2d 830, 836 (Tenn. Crim. App. 1982); Tenn. R. Crim. P. 30(a). The defendant did not request this special instruction prior to the regular jury charge and voiced no objection to the original charge which did not contain an instruction on the definition of "physical control." Although he offered to reduce his request to writing after the trial court's special instruction, his offer did not come until after the jury sent word it had reached a verdict. Under these circumstances, we conclude the trial court did not err in finding the request came too late.

For these reasons, the defendant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE